ARTHUR L. HOUSTON v. HENRY TRAPHAGEN, EXECUTOR.

1. For an injury resulting from a fall into an opening in the sidewalk of a public street, communicating with a cellar of the adjoining building and left without guard or notice of danger, the owner and occupier of the premises is liable.

2. Whether the injured person contributed to the injury by his negligence depends on the circumstances; and where it appeared that he stepped into the unguarded opening while his attention was attracted by objects in a shop window above the opening, the plaintiff should not be non-suited, and a verdict in his favor should not be disturbed.

3. When it is claimed that the fall produced or excited disease, it should appear, in order to recover damages for the results of the disease, not only that the fall was a possible cause of the disease, but other causes should be so excluded and the circumstances should be such as to leave a reasonable inference that the fall was the actual cause.

---

In case. On rule to show cause.

Argued at November Term, 1884, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, REED and MAGIE.

For the rule, *T. N. McCarter.*

*Contra, A. S. Cloke* and *Gilbert Collins.*

The opinion of the court was delivered by

MAGIE, J. Plaintiff, when six years old, fell down a flight of stone steps leading from a public street in Jersey City into a cellar of a house owned and partly occupied by John Levy, now deceased. The present suit was brought against Levy's executor to recover damages for the injury received.

The trial resulted in a verdict for plaintiff, assessing his damages at $10,000. A rule to show cause was allowed and is now sought to be made absolute upon the grounds, first, that the evidence disclosed no liability on the part of deceased for the injury; second, that plaintiff contributed to the injury by his own negligence; and third, that the damages awarded exceed any amount warranted by the evidence.

The first ground taken against this verdict is clearly untenable. The steps down which plaintiff fell opened within the lines of a public highway, and had doors of iron grating which, when shut, were level with the paved sidewalk. At the time of the accident one of the doors was open and lay flat on the sidewalk. There was evidence from which it could be inferred that the door had been opened by a member of the family of deceased, using the cellar on his account. The opening was left without any guard or warning of danger. The liability of the owner and occupier of premises thus used, for a resulting injury, is well settled. *Durant* v. *Palmer,* 5 *Dutcher* 544.

The second objection is equally without force. Plaintiff, at the time of the fall, was approaching a druggist's window just over this unguarded opening. Attracted by the contents of the window, he did not observe the opening in the pavement, and stepped into it. But such conduct was not necessarily negligent. Whether so or not depended on the circumstances. I think the motion to non-suit on this ground was properly denied, and that it was correct to permit the jury to say whether plaintiff was negligent in walking upon a public sidewalk, and, in the absence of any notice of danger, in reli-

ance on the public way being preserved safe for passers, permitting his attention to be drawn from the spot on which he was about to step, to surrounding objects. A verdict finding no negligence in such conduct ought not to be disturbed on that ground. *Durant* v. *Palmer, supra.*

The objection to the amount of damages is more formidable. Plaintiff's contention was that the fall induced a disease—called Potts' disease of the spine—which had given excessive pain for years, and finally resulted in an angular curvature of the spine, a permanent, incurable deformity, unfitting plaintiff, (who at the time of the trial was about nineteen years old,) for many of the occupations and pleasures of life, and sensibly depriving him of what he might otherwise have acquired or enjoyed. The large verdict clearly indicates that the jury found that the fall was the cause of the lamentable effect attributed to it by plaintiff. Defendant's contention now is that there was no sufficient evidence to support this finding, or that the preponderance of the evidence was against it.

The question presented is whether the evidence shows a causal connection between the fall and the disease which undoubtedly produced plaintiff's deformity.

Upon such a question much reliance must be placed on the evidence of experts. Those who were called as experts in this case all agree that the disease in question—a form of scrofula—may be developed by a fall, a blow or other violence, but may also be developed by other causes, and sometimes without apparent cause. But it was obvious that plaintiff was bound to make out, not merely that it was possible that the fall caused the disease, but that, looking at all the circumstances, it was reasonable to infer that it was the cause.

The fall occurred about April 10th, 1871. The plaintiff was examined shortly after by the physician of his family, who observed and treated a wound on the side of the head. No other serious injury was then discovered or treated. No physician saw him from that time until January 28th, 1872, when the same physician examined him and discovered this disease in existence. When called as a witness by plaintiff,

this physician was asked to what he attributed the spinal curvature, and he replied : " It is a surgical rule that injuries, falls, blows, great violence, are the most common factors as exciting causes of spinal curvature—that is, Potts' curvature." Nor do I find any more decided opinion pronounced by him on the subject. On cross-examination he was asked the following question : " When asked in regard to your opinion as to whether this deformity was the result of that fall, you answered by saying that it is the surgical rule ; I want to know what your opinion is ? " And he answered : " I could not testify what caused the spinal caries in that little fellow's back." The following question was put to him : " Without knowing something with regard to the boy's health during that interval, could you safely say that the diseased condition you found on January 28th, 1872, was due to a fall in April, 1871, without knowing something about the condition of the boy during the interval ? " And he answered : " No, I could not."

Another witness called by plaintiff as an expert was asked for an opinion, by a hypothetical question properly presenting the facts, and replied : " I would say that it was possible the curvature might be produced, or the disease which produced the curvature, by the fall, possibly ; in the absence of any other means of obtaining any knowledge of a cause of such disease, the only one being that he had a fall, I would say that presumably that it might be." On cross-examination he was asked : " In your opinion as a surgeon, do you think that the disease which produced this curvature was due to the fall ? " And he replied : " I could not say ; I do not know ; I do not know enough about it ; I did not examine him after the injury, and I have no means of knowing how much injury he received at that time ; but in the absence of anything else, and I being informed that he had received an injury, I would naturally attribute it to that." The cross-examiner further asked him : " Without knowing anything of the history of the case in the interval between the fall and the examination, which was made on January 28th, 1872, would you then give it as

your opinion that it was caused by the fall?" And he answered: "I would know of no other cause."

It was on this evidence of experts plaintiff's case was rested. It seems to me to come short of establishing a causal connection between the fall and the disease. At the most it showed that the fall was a possible cause, and in the absence of other causes might be inferred to be the cause. But it failed to establish that inference because the case failed to negative other possible causes, and each expert qualified his testimony by reference to his ignorance of the plaintiff's condition between the injury and the discovery of the disease. The proof of his general good health was not inconsistent with other exciting causes of this disease. A verdict founded on this evidence would seem to be rather a result of guess or speculation than a deduction from the proved facts.

Two expert witnesses were called by defendant. Their testimony emphasizes the importance, (which had been plainly shown by plaintiff's experts,) of knowing plaintiff's condition after the fall, and particularly the immediate effect of that accident, to a correct determination of the cause of the disease afterward discovered. Both agree that if the fall was the cause the immediate effect would have been marked. One said that there would have been violent pain, tenderness on pressure, and inflammatory symptoms, which would have been unmistakable and could have hardly failed to call the attention of a layman. The other declared that there would have been local manifestation of an injury immediately, at the seat of the injury, which would have continued and eventuated in plain marks of the disease. There is no contradiction of this evidence.

It is plain, from the evidence of plaintiff and his father, that no such result immediately followed the fall. The first indication of trouble was at an interval, rather vaguely described as "some months," and then not of the character described as usually following an injury such as would excite this disease.

My review of the evidence has convinced me that the case, as made by plaintiff, was not sufficient to justify the conclu-

sion that the fall was the cause of the disease, and that the weight of the evidence is against that conclusion, because the immediate results of the fall were not such as would have appeared in that event.

The verdict which has made the estate of deceased liable for the disease which has marred and disabled plaintiff ought not, on this evidence, to be sustained. The rule must therefore be made absolute.