Kammas and wife, Appellants, vs. Karras and another, Respondents.

*November 8—December 5, 1922.*

*Automobiles: Negligence: Death: Boy running from sidewalk into street: Nonsuit.*

In an action to recover damages for the death of a boy three and one-half years old, caused by being struck by an automobile truck, a nonsuit was properly granted where the evidence showed that the driver of the truck turned onto an intersecting street, and that the deceased, unseen by the driver, started from the sidewalk, ran diagonally across the street, approached the truck, which was proceeding at the rate of three to four miles per hour, from the side and rear, and collided with its left front side. Crownhart, J., dissents.

Appeal from a judgment of the circuit court for Milwaukee county: E. T. Fairchild, Circuit Judge. *Affirmed.*

Action to recover damages for the death of the three-and-one-half-year-old son of the plaintiffs, caused by his coming in contact with a truck driven by a servant of the defendants. On the day of the accident, July 22, 1921, at about 7 o'clock in the evening, the truck was driven south on the west side of Sixth street, turned west on the north side of Poplar street, and came in contact with the boy about forty feet west of the turn. The evidence shows the accident took place either a short distance north of the center of Poplar street or from there to within three or four feet of the north curb of Poplar street. The truck at no time reached the center of Poplar street, and the evidence all tends to show the turn was made not far from the north curb. When the truck was making the turn the boy was on the sidewalk on the southwest corner of Poplar and Sixth streets. The evidence is a little in conflict as to whether or not the boy started to cross the street before the turn of the truck was completed. The driver did not see the boy till within a foot or so of the truck, when it was too late to stop it and avoid the accident. A man standing on the corner near the boy raised his hand towards the driver when he was at or near the turn, but the driver mistook the signal for one of salute and not a stop signal. Immediately after the turn was made, a man, Kramer, sitting in the rear of the truck, noticed the boy crossing the street and running toward the truck and called to the driver to stop, but the driver did not hear him and the man at once jumped up and seized the driver by the shoulder and repeated his order to stop, which was immediately obeyed but too late. One of the defendants, who also sat in the rear of the truck, saw the boy running towards it, but he says he was so excited that he could not call out till the collision occurred. The boy ran into the front left side of the truck, was struck in some way, fell down, but before any one came to his assistance got up, ran back across the street to a place considerably south of the place he started from, where he fell

down again and was taken in charge by the man on the truck and others. No especial visible signs of violence were observed except that he was bleeding. He died after being taken to a hospital. At the close of plaintiffs' testimony the court granted a motion for a nonsuit, and from a judgment entered accordingly the plaintiffs appealed.

*George Sfetsos,* attorney, and *Walter L. Gold,* of counsel, both of Milwaukee, for the appellants.

For the respondents there was a brief by *Kanneberg & Darnieder* of Milwaukee, and oral argument by *Francis A. Darnieder.*

VINJE, C. J. The trial court granted the nonsuit because no negligence on the part of the defendants was shown. We think it ruled correctly. Fairly construed, the evidence shows that the boy started from the sidewalk at about the time the truck made the turn into Poplar street; that he ran diagonally across the street, and at all times till just about the moment of impact to one side and a little behind the driver. The boy was a nephew of the defendants and had been given rides on the truck a number of times. It is probable that, seeing and recognizing the truck, he started across and after it for the purpose of getting a ride. At any rate it is certain that he approached it from the side and rear, and it is for that reason no one saw him till too late. The driver testified that he was looking ahead and did not see the boy till he was so close to the side of the truck that he could not stop in time to save him. The truck was proceeding at a rate of from three to four miles an hour after the turn, the driver stated. This is obviously correct, for several reasons: first, because the boy covered a greater distance than the truck did after the turn was made, and second, the driver intended to take the truck to the garage, the entrance of which was only about thirty feet west of the place of collision and on the north side of Poplar street. Plaintiffs' witnesses were foreigners and

testified in part without interpreters, and in answer to a few leading questions it is made to appear that the boy started across the street before the truck made the turn, and in one or two places the testimony seems to show that the boy was even in front of the truck when he was struck. But such testimony was negatived when special attention was called to it, and we think the trial court was fully justified in viewing the effect of the testimony as being in substance what is set out in the statement of facts.

Under such circumstances we think it can be said as a matter of law that there was no negligence on the part of the defendants. The boy reached the truck from the side and the rear and the driver did not see him till the moment of impact. The witness Kramer immediately upon seeing him used every reasonable effort to avoid the collision. The defendant in the truck did not see the boy till the peril was so great that it momentarily stunned him, and the collision occurred before he could do anything. The fact that the boy was seen on or near the sidewalk on the opposite corner as the truck made the turn could not charge the defendants with knowledge that he would attempt to cross the street and overtake the truck. It appears that a reasonable lookout was kept; that the truck was driven at a slow rate of speed, and that no one saw the boy running in such a direction that it was likely that he would collide with the truck till it was too late to save him by the exercise of the highest degree of care. Regrettable as the accident is, the result cannot be charged to the defendants.

*By the Court.*—Judgment affirmed.

CROWNHART, J. (*dissenting*). I think the court has not correctly interpreted the evidence or it could not reach the conclusion it does. The evidence consists of that given by the colored driver Hazley, the defendant *Charles* (Gus) *Karras,* and Samuel Kramer. The driver and *Karras* were hostile witnesses. The driver found it hard to understand

directions, and he could not understand the diagram used on·the trial at all. The defendant *Karras* could not understand the diagram, had little understanding of the English language, and gave part of his testimony through an inter-·preter. Kramer had difficulty in understanding the language. But by studying the evidence carefully, as found in the transcript, the situation is as clear to me as a pikestaff.

The three witnesses were in a Ford auto truck going south on Sixth street and turned west on Poplar street. The driver, a colored lad seventeen years of age, sat on the left-hand side of the seat, and *Karras* sat on his right, on the seat. Kramer sat in the box at the back end of the truck.. All three faced forward. They were going to defendants' garage, which was located·on the north side of Poplar street, seventy feet west from the west curb of Sixth street. The driveway into the garage was twelve feet wide. Sixth street and Poplar street are each forty feet wide between curbs. ·As the driver came to Poplar street he swung his machine wide into the center of Poplar street, and passed east near the center of the street. This was so he could have room for the turn north into the garage driveway.

On the southwest corner of Sixth and Poplar streets some children were playing, including the deceased child, three and one-half years old. On the same corner stood a man, whom the driver saw just as he was making the turn, and who threw up his hand to signal the driver to stop, because of danger to the little child who was then running in the street.˙ Of course the child was already in the street running across or there would have been no danger apprehended. The driver did not understand the signal, so· he said. He also said he did not see the child. However, this court on many occasions has said that one cannot be heard to say that he did not see that which was perfectly plain in line of his vision. The driver saw, or should have seen, the child, who was within his plain vision, running

northwest across the street. The driver said he was going eight miles per hour on Sixth street, and slowed down to about four miles per hour on Poplar street. He struck the child, according to his estimate, forty feet west of the west curb line of Sixth street near the center of Poplar street. He also placed the point near the garage drive-way—about eight feet east of it—which would make the point of collision more than forty feet west on Poplar. The driver testified that he was looking straight ahead, neither to the right nor the left, and that he claimed was his duty. On the trial he claimed he did not see the child until just as it ran into his machine fender about three feet back of the front end, but before the coroner's inquest, had one week after the accident, he said he first saw the child when it was about a foot and a half in front of his machine, and that he ran into it and knocked it down. The trial was had the 2d of May, 1922, and the inquest was the latter part of July, 1921, and, as the colored lad said, it was a long time after the accident at the trial, and some things had "slipped his brains." It is only fair to say that his testimony at the inquest was the truth—he ran into the child as the child was running across the street diagonally ahead of his machine.

Kramer says he saw the children playing as they were going south on Sixth street, and just before the turn of the machine the little fellow ran into the street, going north-west. He saw the danger to the child and hollered to the driver "Stop! Whoa!" and as the driver did not stop he jumped up and ran forward in the box and grabbed him by the shoulder, but too late to save the "baby."

*Charles* (Gus) *Karras* saw the children playing and saw the boy run into the street at the turn of the auto truck, but said nothing to the driver and did nothing to avoid the danger. He again saw the boy in the center of Poplar street, running diagonally across the street to the north-west and just cutting in ahead of the machine, which was

then several feet east of the line on which the boy was running. He then made no effort to avoid the danger.

Here we have plainly a case of negligence on the part of the driver, for which defendants are responsible. His negligence he attempts to excuse by saying "I was watching the way I was turning the machine and that was where I was supposed to watch." Question: "That is, you thought it was your duty to look straight ahead?" Answer: "Which it was." This conception of his duty is not the law. In a congested residence district where children play on the streets to the knowledge of every driver of an automobile, it is the duty of drivers to avoid running over them by keeping their cars under control, and to keep a careful lookout to see that they do not injure the thoughtless little ones who may be reasonably expected to dart into the streets. I think a reasonably prudent driver would give more consideration to a farmer's chickens than did this driver to the street urchins playing on the corner in plain sight.

The defendant *Charles* (Gus) *Karras* was quite as guilty of negligence as the driver. He was confessedly guilty, for he saw the child in danger and made no effort whatever to avoid the accident. His negligence was so plain that it would justify a directed verdict against him.

To sum up: The little boy ran diagonally across Poplar street to the northwest, going practically in direct line to defendants' garage. It is plain to be seen that he did not see the auto truck, as he was facing ahead of it all the time. He was only three and one-half years of age, hence not guilty of negligence. The boy was at all times in plain view of the driver and of the defendant *Karras*. They did nothing to save the child, but ran him down heedlessly and recklessly. Kramer, in a less favorable position to see, did see, did immediately recognize the danger, and tried to attract the attention of the driver and get him to stop, but the driver went on his reckless course and killed an innocent babe.

I have considered the testimony favorable to the plaintiff,

as the lower court should have considered it before he could take the case from the jury, and I can see no justification for the judgment. Further, on all the evidence I consider the defendants clearly liable.

In the court's statement of facts it is said that "the truck at no time reached the center of Poplar street, and the evidence all tends to show the turn was made not far from the north curb." The defendant testified:

"Q. Can you tell us about in what part of Poplar street your automobile was traveling at the time the boy got hurt, whether it was towards the middle or towards the curb? A. It was in the center street, and that is very little that it was towards to the right where our garage was, but it was pretty near in the center."

"Q. And you were traveling in about the center of Poplar street all the time from the time you made the curve up until this happened? A. It was about in the center, yes sir, as we were going to put the car in the garage."

It is further said that "the driver did not see the boy till within a foot or so of the truck, when it was too late to stop it and avoid the accident." This ignores the fact that the jury had the right to draw the inference that the driver could have seen the boy, who was in plain view when he made the turn and who was then running into the street.

It is further stated that "one of the defendants, who also sat in the rear of the truck, saw the boy running towards it," but the evidence clearly shows that the defendant sat on the seat with the driver of the truck.

Again, the statement says "the boy ran into the front left side of the truck." There was evidence to this effect, but there was also the evidence of the driver, given before the coroner's inquest, that the boy ran in front of the truck and he ran into the boy and knocked him down. The question was therefore one for the jury, and is not to be taken as conclusive that the boy ran into the left side of the truck.

In the opinion it is stated that "the boy was a nephew

of the defendants and had been given rides on the truck a number of times." The defendant testified that he gave the boy but one ride, and that was on the Fourth of July.

The opinion further states that "at any rate it is certain that he [the boy] approached it from the side and rear." I think it is demonstrable from the evidence that the boy ran diagonally across the street to the northwest, at all times ahead of the automobile.

It is also said in the opinion that "the boy covered a greater distance than the truck did after the turn was made." But assuming the evidence to be that the truck was in the middle of the street and that the boy was running across the street when the turn was made, it is clearly demonstrable that the distance the boy ran after the turn was considerably less than the distance the truck had to run.

I think the court has a misconception of the facts in this case. If the evidence is such that reasonable men may come to different conclusions as to the facts or the inferences to be drawn therefrom, then the case is for the jury. This has been stated so many times by this court that citation is unnecessary, but on the interpretation of the rule I may cite the last paragraph of the dissenting opinion of Justices WINSLOW and DODGE in *Agen v. Metropolitan L. Ins. Co.* 105 Wis. 217, at p. 227 (80 N. W. 1020).

I therefore respectfully dissent.