EVALD GAUSVIK, Respondent, v. LARSON RICHTER COMPANY, a Corporation, Appellant,

and

STEARNS MOTOR COMPANY, a Corporation, Respondent, v. LARSON RICHTER COMPANY, a Corporation, Appellant.

(212 N. W. 846.)

**Automobiles — parked on highway — equipped with tail light.**

1. In two actions, one for personal injury and one for damage to an automobile, where it appeared that the driver of a car upon the exhaustion of the supply of gasoline had driven off to the right side of the highway and parked the car temporarily awaiting relief and while so parked a car, proceeding in the same direction such driver had been traveling, collided with the car thus

parked, the evidence is examined and it is held that there is substantial evidence that the parked car was equipped with a functioning tail light.

**Automobiles — parked on highway — collision — negligence — jury.**

2. Where the driver of an automobile had occasion to stop on a highway in the nighttime on account of a temporary disability to proceed, and where in so doing he parked the car on the extreme right side of the graded highway, such car being equipped with a functioning tail light, and where a collision resulted between his car thus parked and another proceeding in the same direction, it is held that the questions of negligence and contributory negligence are questions of fact for the jury.

Opinion filed March 21, 1927.

Motor Vehicles, 28 Cyc. p. 47 n. 20; p. 49 n. 46, 47.

Appeal from the District Court of Ward County, *Moellring,* J. Affirmed.

*L. J. Palda,* Jr., and *C. E. Brace,* for appellant.

*McGee & Goss* and *G. W. Twiford,* for respondent.

BIRDZELL, Ch. J.   Two actions entitled as above arose out of a single automobile accident.   They were tried together in the district court and separate verdicts were returned for the plaintiffs.   Alternative motions for judgment non obstante or for new trials were made and denied and separate appeals were taken to this court where the causes were argued together.   Inasmuch as the same questions are presented in both appeals, one opinion will suffice.

On the evening of November 13, 1925, Evald Gausvik, plaintiff in one of these actions, procured from the Stearns Motor Company in Minot, plaintiff in the other action, a second hand Ford car, for the purpose of attending a dance at Burlington, a station some distance west of Minot near the Roosevelt Highway.   Returning to Minot rather late at night, Gausvik had proceeded several miles from Burlington when he noticed that his supply of gasoline was exhausted.   He drove the car to the right hand edge of the graded highway, where the engine stopped and the front lights went out.   He was accompanied by a young lady.   They sat in the car for a short period when they noticed another car coming from Burlington driven by one Jensen.   Gausvik hailed Jensen, who stopped and consented to go back to a filling station on the

highway to procure some gasoline for Gausvik. Jensen then drove on down the road a short distance, turned his car around and started back towards Burlington on his errand. As he was starting west after turning around, he noticed another car approaching from the west. This car belonged to the defendant and was driven by one Westerlind. As these cars approached each other, they met either opposite or a little way to the west of the Gausvik car. The Gausvik car was not seen by Westerlind, owing, as he explains, to the blinding effect of the lights of Jensen's car, until he was within about twelve feet of the car. A collision resulted in which Gausvik sustained personal injuries and the Ford car in which he was sitting was considerably damaged. Gausvik's action is to recover damages for his personal injuries and the Stearns Motor Company's action is to recover for the damages to the car. In each action the defendant answered, interposing a general denial and in addition pleading the circumstances connected with the accident, specifically denying any negligence and alleging that the injuries were caused by the negligence of Gausvik. Counterclaims were likewise interposed in each action based upon the negligence of Gausvik and resulting damage to the defendant's car.

The contentions upon this appeal are that the evidence is insufficient to support the verdict and that Gausvik was guilty of contributory negligence, as a matter of law, in stopping his car at the place where it was stopped without a tail light that would warn drivers approaching from the rear of its presence.

The evidence is conflicting as to the distance the Jensen car had proceeded west of the Gausvik car at the time of the collision; also, as to the clear space between the Gausvik car and the Jensen car to permit the defendant's car to pass. However, there is ample testimony from which the jury would be warranted in finding that there was sufficient space between the two cars to permit the defendant's car to pass even if the Gausvik car and the Jensen car were opposite one another at the time of meeting. There was likewise a conflict in the evidence as to the speed at which the defendant's car was being driven. The occupants of this car testified, in substance, that they had maintained a speed and were going at the rate of between twenty-five and thirty miles per hour, while Jensen testified to a much higher rate of speed; but this conflict, if it may be termed a conflict, on account of Jensen's lack

of facility for estimating the speed of the other car, is in our opinion unimportant. The principal argument in this connection is that the Ford car in which the plaintiff was sitting when the collision occurred was not equipped with a tail light. On this matter the plaintiff testified:

Q. You say you walked around the car to see if everything was all right. What do you mean by that?

A. Just walked around the car to see if the lights were burning and if I was far enough out of the road so we would be safe.

Q. You say light, you mean the tail light? A. Yes, sir.

Q. You had lit the tail light? A. Yes, sir.

Q. And it was in operation, was burning? A. Yes, sir.

Q. You know that, do you? A. Yes, sir.

.     .     .     .     . .     .     .     .     .     .     .     .     .

Q. Well, did you do anything before that, before they (meaning Jensen) came along? A. What do you mean?

Q. Well, anything about the car?

A. Why, yes. When I found out I had run out of gasoline, or thought I had, I went to work and tried to crank it again and got it started enough so that I pulled to the right hand side of the road, and I walked around the car to see if everything was all right, if the tail light was on, and it was.

And in response to a question by the court, the plaintiff likewise answered that the tail light was on and that he thought it was connected up with a Hotshot battery or cells. Further, on redirect examination, the witness testified:

Q. Counsel this forenoon asked you about this tail light there on that car. You told him it was burning. Tell us how you knew it was burning.

A. Well I got out of my car and I walked around it and I see the tail light was burning.

Q. And was that after the engine had stopped? A. Yes, sir.

Q. You couldn't be mistaken about that? A. No, sir.

J. W. Stearns, vice president of the Stearns Motor Company, stated that he knew the source from which the lights of the car were supplied, and then he testified:

Q. And what was the—what did the lights run from that night on that car?

A. Why the headlights, of course, run from the magneto, and the tail light is connected up with a Hotshot battery.

Q. Was it so connected up that night to your knowledge?

A. Yes, it was.

Q. How do you know? Tell the jury how you know.

A. Well I know because he asked me about lights when he took the car and we looked the lights over, and also the day before when the car was taken in I discovered that in looking the car over and when I was appraising it as a second-hand car I noticed that.

Q. So, in other words, the tail light ran independently of the front lights? A. Yes, when the motor was not running.

Q. In other words, when the motor was not running this battery was turned on?

A. To keep the tail lights going, yes, sir. .

The testimony of the witnesses, except the plaintiff, who were present at the time of the accident and who testified upon this subject, is all to the effect that the tail light was not burning, and it was further stipulated that the former owner of the car, if present, would testify that the car was not equipped with an electric tail light and that the tail light was an oil lamp which came with the car and was not in working order.

From this it is argued that the overwhelming preponderance of the evidence established the absence of a tail light on the Gausvik car and, from the premise that such was the fact, it is said that Gausvik's act in stopping the car at the edge of the highway without a tail light was an act of negligence precluding recovery, and that the verdicts must be set aside as not supported by the evidence. We are of the opinion that it cannot be said that there was not substantial evidence from which the jury would be justified in finding that the Gausvik car was equipped with a tail light and that it was burning at the time of the accident.

The contention that Gausvik was guilty of contributory negligence, as a matter of law, in stopping his car at the place where the accident occurred, must be considered in the light of the evidence bearing upon the existence of the tail light and of a finding by the jury according to the view most favorable to the plaintiff. In other words, the inquiry

resolves to this, whether the driver of a car equipped with a function-ing tail light, who has occasion to stop his car on a highway in the nighttime and who drives the same to the extreme right side of the grade before stopping, is, while parked in this condition, guilty of a continuous act of negligence which may be said to be the cause, either primary or contributing, of any collision between his car and another rightfully using the same side of the highway. On this subject 1 Blash-field's Cyc. of Automobile Law, p. 556, says:

"While motion is the general law of the road, this law is subject to limitations imposed by reason and necessity, and the driver of an automobile or other vehicle may leave the prescribed route to avoid an obstacle otherwise unavoidable, and may within reason, in absence of any statute or ordinance controlling the situation, stop and stand with-out being held negligent, so as to be liable for, or barred from recovery for, injuries flowing from a collision with it by other vehicles.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Where a driver of a truck, having its tail light lit, halted his ma-chine for the purpose of examining the condition of his load, and to determine the cause of a knock in the motor, the question of the negli-gence of an auto stage in running into it was held 'for the jury.'"

The case abstracted is that of Colvin v. Auto Interurban Co. 132 Wash. 591, 232 Pac. 365. See also Bergenthal v. Boynton Auto. Livery Co. 179 Wis. 42, 190 N. W. 901, 22 N. C. C. A. 233; Dare v. Boss, 111 Or. 190, 224 Pac. 646.

Even where statutes declare it unlawful to leave a vehicle standing on the main traveled portion of a highway, such statutes, either by express provisions or by reasonable construction, are held to except vehicles stopping on account of a temporary disability. See 1 Blash-field's Cyc. of Automobile Law, pp. 557, 558. Under the evidence in the instant case, we are of the opinion that questions of negligence and contributory negligence were for the jury.

It follows that the judgments and orders appealed from must be affirmed. It is so ordered.

NUESSLE, CHRISTIANSON, BURKE, and BURR, JJ., concur.