WACHSMUTH, by guardian *ad litem*, Respondent, vs. WACHSMUTH, Appellant.

*February 6—March 7, 1933.*

684

For the appellant there was a brief by *Lamoreux & Cate* of Ashland, and oral argument by *C. A. Lamoreux*.

For the respondent there was a brief by *Walsh & Morris* of Washburn, and oral argument by *Charles F. Morris*.

Nelson, J. Every action involving personal injury to a little child contains an appeal to our sympathy which may easily lead us, or any court, away from the paths of justice. It is, however, our duty to maintain just rules regardless of unfortunate results to a litigant in a given case.

The accident which resulted in this action occurred on First street in the city of Bayfield on the 12th day of May, 1931. First street is a paved street only twenty feet wide and runs north and south. The accident happened a few feet north of the middle of the block. A residence, hereafter called the "Blume house," was located on the east side of First street. The north line of the Blume lot was the middle of the block. Across the street, slightly to the north, a residence, described as the "Ladd house," was located. The south line of the Ladd lot was on a line with the north line of the Blume lot. Both lots were forty feet wide. At the north side of the Blume lot there existed a driveway which ran into First street. At the time of the accident, which was about 4:30 in the afternoon, the day was bright and clear. Shortly before the accident the plaintiff's mother and a Mrs. Evenson were visiting with Mrs. Blume on the latter's front porch. Mrs. Evenson had come to the Blume house in her Chevrolet sedan. The sedan was parked somewhere in front of the Blume house though its exact location does not clearly appear. For a short time before the accident the plaintiff, who was nearly four years of age, had been playing in front of his own house which was located directly to the north of the Blume lot. Some other children who had been playing there had gone over to the Ladd house to play. The plaintiff came over to the Blume lot and asked his mother if he couldn't go across the street to the Ladd house. Consent to his going was given. He thereupon went back to his house, obtained an apple, and shortly thereafter started to run in a northwesterly or diagonal direction across the street and toward the Ladd house. After running not to exceed six to

eight feet from the curb he collided with the right front side of defendant's car which was proceeding in a northerly direction along said street at not to exceed fifteen miles per hour. The defendant had made a sharp turn into First street about two hundred feet to the south and was proceeding up First street which inclined to the south. The defendant had passed the Evenson car, which was parked somewhere in front of the Blume house. The plaintiff's contact with defendant's car occurred at a point a little northwest of the driveway mentioned.

The defendant did not observe the plaintiff before the accident, did not know that the accident had occurred, felt no jar to his car, heard no outcry or scream if any occurred, and proceeded on his way. The accident happened on a Tuesday and the defendant did not learn that it was asserted that his automobile was responsible for the plaintiff's injuries until the following Monday. The plaintiff's father and the defendant are first cousins. None of the three ladies who were sitting on the Blume porch observed just how the accident happened or just where the plaintiff was when he came in contact with defendant's car. Mrs. Blume did not see him until the car had passed. Mrs. Evenson did not see the car hit him but saw him when he was underneath the middle of the car. Mrs. Wachsmuth, the plaintiff's mother, glanced at the defendant's car as it went by Blume's but did not pay any attention to it until she heard the plaintiff scream and then observed that he was doubled up under the car. She didn't see the car hit him. She ran to the street and picked him up where he was lying about three feet from the curb on the east side of the street. Just prior to the accident a Mr. Drinville was standing on the sidewalk about in front of the Ladd house. He observed the approaching car and also the plaintiff running as fast as he could across the street in a diagonal direction toward the witness. Drinville realized that an accident might occur and continued to look

directly at the approaching car and the plaintiff. He testified, among other things, as follows:

"Q. Where was the boy when you first saw him? A. He was a little this side of the alleyways from the curb on the east side of the street coming west. Q. Crossing the street? A. Yes, sir. . . . Q. What happened there? A. Why the boy kept coming and the car ran over him, they connected. Q. Which side of the car struck him? A. Well, as near as I could tell he was struck on the right-hand side of the car a little towards the center. It seems when the car passed, he was right in the center of the hind part of the car. When he was hit the car throwed him under, it seems to me like it had to hit him on the right-hand side and he came, when the car passed, he was right straight behind the car. . . . Q. Whereabouts, what part of the car, do you think the boy ran against it? A. I think close to the front fender, as near as I could tell. . . . Q. The car did not hit him in front? A. That I cannot say; all I could say on that, that when the car passed, he was right underneath the car, in the center. Q. Right behind it? A. Yes, sir. . . . Q. How did he get under between the wheels? A. I cannot imagine how he could. By the Court: Do you think he got under the car between the front and rear wheel on that side? A. Well, in my position, I could not tell that, because he was too close to the car in the view for me. I was standing on the other side."

As a result of the accident the plaintiff sustained a broken leg from which he recovered without permanent disability. If the plaintiff was actually under the car it is very clear that he was not run over by any of its wheels as he sustained no such injury as would unquestionably have resulted if a wheel had run over him. Mr. Drinville testified that the Evenson car was parked about two hundred to two hundred fifty feet from where he was. The undisputed physical facts and measurements show his estimate to be wholly incredible. His testimony, if believed, would place the Evenson car at the very south end of the block instead of somewhere in front of the Blume house where its owner was calling. Were it permissible to infer from the credible evidence that the

Evenson car was parked two hundred feet south of the place where Drinville was standing we should have quite a different situation and one in which defendant's vision would have been wholly unobstructed for a distance of about two hundred feet. In such a situation the inference might be permissible that the defendant was negligent in failing to discover the presence of the plaintiff upon the street or in the act of leaving the east side of the street and starting to run across it.

In this case a child of the tender age of about four years, in the middle of a block heedlessly ran into the side of a car being driven with ordinary care (unless it may be said that an automobile driver must not only maintain a lookout ahead and to his diagonal right and left but must continue also to maintain a lookout directly to his right). We think that no such impossible burden or unreasonable duty is or should be imposed upon drivers of automobiles. Although the result is unfortunate for the plaintiff, our duty is plain under the circumstances. There being no credible evidence to sustain the jury's finding of negligence there can be no liability.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint.

FRITZ and WICKHEM, JJ., dissent.