ALLEN, by Guardian *ad litem,* and another, Respondents, v.
BONNAR and another, Appellants.

*November 25—December 20, 1963.*

For the appellants there were briefs by *Whaley & Whaley* of Racine, and oral argument by *Vilas H. Whaley* and *John V. Whaley*.

For the respondents there was a brief by *Brown & Black* and *Harold R. Sheets,* all of Racine, and oral argument by *Harley Brown* and *Dexter D. Black*.

FAIRCHILD, J. 1. *Finding of causal negligence with respect to lookout*. Defendants challenge the sufficiency of the evidence to sustain the finding.

The accident took place mid-block on a city street. It was dusk, about 5:40 p. m., October 12, 1958. Bonnar's headlights were on low beam, and a streetlight was hanging almost directly above the point of impact.

Bonnar was driving east at about 20 m. p. h. Mark and a little girl had been playing in the yard north of the street,

and ran across the street, with Mark in the lead. The street was 36 feet wide, and Bonnar was traveling south of the center. There was no other traffic nor parked cars. Bonnar did not see either of the children except that he saw a "flash" or "shadow" in front of his car and slammed on his brakes. The right front portion of his car struck Mark, but the little girl was not hit. The car skidded 10 feet before the impact, and eight feet thereafter.

Mark traveled 18 feet from the north curb to the center of the street, and eight feet more to the point where he was hit. Defendants suggest that it took Mark between two and three seconds to move from the north curb to the point of impact. If the interval was two seconds, Bonnar was almost 60 feet from the point of impact when Mark entered the street; if three seconds, he was almost 90 feet away. It would take about 44 feet to stop (including reaction time) at 20 m. p. h. The jury could reasonably find that Bonnar should have seen Mark when he entered the street, and could have avoided the accident if Bonnar had done so.

Defendants rely upon several decisions where a motorist has been found as a matter of law not to be negligent when a child ran into a car from the side, or there was some other justification for not seeing the child or pedestrian in time.[1] These decisions are distinguishable on their facts.

2. *Damages for impairment of earning capacity.* The special verdict contained two questions on damages. The first inquired as to the amount which would compensate the child's father for medical and hospital expenses, and was answered by the court. The second inquired as to the as-

[1] *Wachsmuth v. Wachsmuth* (1933), 210 Wis. 683, 247 N. W. 327; *Schmidt v. Heim* (1930), 200 Wis. 608, 229 N. W. 33; *Koperski v. Hoeft* (1923), 179 Wis. 281, 191 N. W. 571; *Kammas v. Karras* (1922), 179 Wis. 12, 190 N. W. 849; *Hanson v. Weber* (1940), 234 Wis. 593, 291 N. W. 800.

sessment of the child's damages for "his pain, suffering and injuries." The court gave the following instruction to the jury:

"If you become satisfied that the plaintiff has sustained an impairment of his ability to make earnings in the future as a consequence of his injuries, you will then include in your answer to this question such further sum as will fairly and reasonably compensate him for such impairment of earning ability."

There was evidence of permanent injury which, particularly with respect to hearing loss, would probably impair Mark's earning capacity to some extent.

Defendants make two contentions. One is that the instruction would permit the jury to award Mark such loss of earning capacity as he might sustain before reaching age twenty-one, although any earnings before that age would belong to his father. The father, however, was also a plaintiff, and if the manner in which the court submitted the case to the jury resulted in any award to Mark which should have gone to his father, defendants are not entitled to complain.

Defendants' second contention appears to be that in the absence of proof that Mark had or would have had the capacity to earn, there is no foundation for an award of impairment of earning capacity. This contention would exclude most children, however seriously injured, from allowance of damages for inability to earn after reaching majority.

We think the contention has been well answered by the supreme court of Minnesota with respect to a boy of three and a half years of age, as follows:

"The evidence was clearly sufficient to warrant a finding that Todd's future earning capacity will be impaired. Even though the extent of that impairment is extremely difficult to evaluate in the case of this young child who is far removed by years from even demonstrating an earning capac-

ity, we can find no basis in principle or reason to hold that the rule should be limited in its application because of the age of the injured party where there is sufficient evidence of permanent disability. Its application must be left to the jury, subject to the admonition as here given by the court to refrain from making a determination based upon speculation, conjecture, passion, or prejudice, and subject further to the post-verdict scrutiny of the trial judge." [2]

This court has said that a minor may recover for loss of earning capacity after majority. [3]

3. *Damage award not excessive.* Defendants contend that the $41,000 award was highly excessive and rendered the verdict perverse. Judge GOODLAND, in deciding motions after verdict, stated that in his opinion the award was within the bounds of reason, and not the result of passion, prejudice, or perversity.

Mark was thrown 18 feet from the point of impact. He suffered a star-shaped fracture of the right parietal bone of the skull, four or five inches across, and a laceration of the scalp which went through the covering of the bone. There was medical testimony, based on fluid discharge from his ear, that there had been a cut into the brain substance, and, further, that there was impairment of the hearing nerve. Mark was unconscious or semiconscious for four or five days.

---

[2] *Capriotti v. Beck* (Minn. 1962), 117 N. W. (2d) 563, 568. See also cases cited in 15 Am. Jur., Damages, p. 502, sec. 91, where it is said: "An infant will not be denied recovery for loss of earning power or for prospective loss of earnings after he has reached his majority because his time has been spent in school or he has never earned anything." See also *Virginian R. Co. v. Armentrout* (4th Cir. 1948), 166 Fed. (2d) 400, 407; *Illinois Central R. Co. v. Staples* (8th Cir. 1959), 272 Fed. (2d) 829, 832; and *Lincoln City Lines v. Schmidt* (8th Cir. 1957), 245 Fed. (2d) 600, 604.

[3] *Callies v. Reliance Laundry Co.* (1925), 188 Wis. 376, 380, 206 N. W. 198; *Osborne v. Montgomery* (1931), 203 Wis. 223, 227, 234 N. W. 372.

He had a fracture of the upper right thighbone, with marked deformity, and a crack fracture of the ulna in his right forearm, without displacement.

Mark was in the hospital thirty-three days, and his right leg in a splint for eleven days, in traction for eighteen days, and in a hip-to-toe cast for a month. He had a cast on his right forearm for three weeks.

Mark was seven years of age at the time of trial. As a result of the healing process, the right leg is three eighths of an inch longer than the left, and this condition will be permanent. This was estimated to amount to a disability of four percent as compared with amputation at the right hip. The right hip is higher than the left, and the right shoulder is a little higher than the left. This condition is likely to continue, and will cause backaches.

At the time of trial, Mark continued to have severe headaches two to four times a week and there was medical testimony that they would probably continue for the rest of his life.

Two of Mark's teachers testified to the hearing difficulties they observed, which affected his schoolwork, and there was testimony that he evidenced self-consciousness because of this trouble. There was medical testimony that he has a quite severe hearing loss in his right ear. One of the doctors testified that part of the hearing loss he observed appeared to be due to an infection which he could not relate to the accident. He did not estimate what portion of the loss was caused independently of the accident. We have, however, reviewed the testimony of both doctors who testified on this subject, and it is evident that both considered that the accident caused a very substantial and permanent hearing loss in the right ear. One of them, called by defendant, did not ascribe any portion thereof to infection.

We conclude, as did the circuit court, that the award was within the range of reasonably debatable amounts.

*By the Court.*—Judgment affirmed.