219 N.J. Super. 468 (1987)
530 A.2d 816
PAUL PHILIP LESNIAK, AN INFANT, BY HIS PARENTS AND GUARDIANS AD LITEM ZBIGNIEW LESNIAK AND BARBARA LESNIAK, AND ZBIGNIEW AND BARBARA LESNIAK, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
COUNTY OF BERGEN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 2, 1986.
Decided July 27, 1987.
*469 Before Judges MICHELS, SKILLMAN and LANDAU.
*470 Lewis Stein argued the cause for appellants (Nusbaum, Stein, Goldstein & Bronstein, attorneys; Lewis Stein and Stuart J. Lehman, on the brief).
Richard J. Donohue argued the cause for respondent (Donohue & Hughes, attorneys; Richard J. Donohue, on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiffs Paul Philip Lesniak, an infant, by his parents and guardians ad litem Zbigniew Lesniak and Barbara Lesniak, and Zbigniew Lesniak and Barbara Lesniak, individually, appeal from a judgment of the Law Division entered on a jury verdict against defendant County of Bergen that awarded the infant plaintiff $150,000 and his parents $20,000.
Plaintiffs seek a reversal of the judgment and a remand for a new trial limited to the issue of the damages awarded the infant plaintiff. They contend that: (1) the jury instructions concerning the infant plaintiff's future pain, suffering and disability were erroneous; (2) the trial court erred in failing to charge the jury with respect to the infant plaintiff's loss of future earning capacity, and (3) the damages awarded were insufficient and against the weight of the evidence. We have carefully considered the record in light of the arguments presented and are satisfied that the evidence in support of the jury verdict with respect to the compensatory damages awarded is not insufficient; that the trial court's ruling on the motion for a new trial does not constitute a manifest denial of justice, and that all issues of law raised are clearly without merit. R. 2:11-3(e)(1)(B), (C) and (E). However, further comment may be helpful with respect to some of plaintiffs' contentions.

I.
Plaintiffs argue that the charge with respect to the infant plaintiff's future pain, suffering and disability was erroneous and that, as a result, the jury rendered a verdict which was *471 grossly inadequate. Plaintiffs ground this claim of error on the basis of two passages taken from the entire charge. One passage provides:
Now, as I've told you, you're not to speculate. You can't  you can determine that there was permanent injury based on the evidence in this case. For example, if a doctor testifies that based on medical probability something will not get any better and will stay the same, then you may determine based on that evidence that that's permanent injury or disability. Do not speculate as to permanent injury as distinguished from finding permanent injury based on evidence in this case.
The other portion of the charge cited by plaintiffs deals not with the issue of permanency, but rather with speculation. This passage states:
It's not enough for a plaintiff to prove a mere possibility that a particular injury or claimed item of damage resulted from the accident. Speculation is not enough. It must be shown that the injury and damages were the natural and probable consequences of the accident. In any event, the damages to be awarded in this case are compensatory damages as distinguished from punitive damages. You cannot consider anything by way of punishment in awarding compensatory damages.
Plaintiffs argue that, taken together, these two instructions "heighten[ed] the jury's sensitivity about the speculative nature of an infant's future damages [and] served to link permanency to speculation, thereby undermining the jury's task of evaluating medical prognosis which is inherently less than certain." Additionally, plaintiffs maintain that the trial court's definition of permanent injury as one which "will not get any better and will stay the same" confused the jury. According to plaintiffs, defining permanent injury in this manner was tantamount to having told the jury "not to award damages for [the infant plaintiff's] injury or any of his resulting disabilities unless medical experts testified they were to remain for the rest of his life fully as debilitating as at the time of trial." Plaintiffs also allege error because, in their view, the trial court's definition would preclude a recovery for permanent injury for any condition for which future medical expenses were allowed. Plaintiffs' argument is that if a jury awarded damages for future medical expenses, they must have believed that the proposed treatment would improve the infant plaintiff's condition and, *472 therefore, that the condition did not constitute a permanent injury as defined by the trial court.
Initially, it should be noted that a finding of error cannot be predicated on an isolated segment of a charge as plaintiffs urge here. Rather, "the charge should be examined as a whole to determine its overall effect." State v. Wilbely, 63 N.J. 420, 422 (1973). See State v. Council 49 N.J. 341, 342 (1967); Jurman v. Samuel Braen, Inc., 47 N.J. 586, 592 (1966). Our review of the charge shows that, on several occasions, the trial court alluded to the notion of permanency. It specifically instructed the jury to consider whether plaintiff's "future ability to function physically and mentally" would be impaired by a permanent injury. Moreover, the trial court indicated that any award must compensate the infant plaintiff for any damages which "can reasonably be expected to continue into the future." Thus, even if, contrary to our findings, the passages quoted by plaintiffs are susceptible of the interpretation they espouse, the remainder of the charge would lead an ordinary juror to believe that injuries which continue into the future are compensable even though they will improve with treatment. See Ellis v. Caprice, 96 N.J. Super. 539, 546 (App.Div. 1967), certif. den. 50 N.J. 409 (1967) ("the ultimate test of the soundness of the instructions to the jury is not what the ingenuity of counsel can, at leisure, work out the instructions to mean, but how and in what sense, under the evidence and the circumstances of the trial, ordinary jurors would understand the instructions as a whole").
Moreover, plaintiffs' contention that the trial court intended to supply the jury with a formal, binding definition of "permanent injury" is untenable. When the trial court felt it necessary to define certain concepts for the jury, it did so in clear and unambiguous language. Thus, when using the terms "disability" and "impairment," the trial court noted, "Disability or impairment means worsening, weakening, or loss of faculties, health, or ability to participate in activities." (Emphasis *473 supplied). Furthermore, the trial court's choice of words makes clear that in addition to defining the concept of permanency in broad terms, it was trying to explain, by way of example, what type of evidence would justify an award for permanent injury.
A final aspect of plaintiffs' argument related to the issue of permanency concerns two cautionary instructions given to the jury by the trial court. After one of the treating physicians testified as to a tremor he had noticed in the infant plaintiff's left hand, the trial court instructed the jury as follows:
There was a reference to a hand tremor. And, there has not been any medical testimony in this case causally relating the hand tremor to the accident.
I'm advised that the plaintiffs do not intend to produce any medical testimony that the hand tremor was caused by the accident.
The law is to the effect that something, a condition like that has to be causally related by a medical doctor in order to be considered by the jury in a case. In other words, you cannot, on your own, none of us can, without competent medical testimony, conclude or find that something like a hand tremor was caused by a particular accident.
So, the hand tremor is not a part of the case. There is no claim that the hand tremor was caused by the accident. And, I want to make that clear now.
Thereafter, testimony by Mrs. Lesniak concerning the tremor in the infant plaintiff's left hand elicited another cautionary instruction from the trial court:
I did give you some instruction regarding the left-hand tremor. I'm ... now instructing you that you've heard testimony regarding a left-hand tremor and ... there are references to a left-hand tremor in the hospital records and that's before you, that's in evidence. You're going to have to weigh and evaluate that.
There is not going to be any medical proof that the left-hand tremor is permanent.
I don't know what other proofs are going to be educed [sic] by the plaintiff[s] before the end of the trial. But as it stands now, you are not to award anything in this case if you find liability and are considering damages. You are not to award anything for a left hand tremor which is a permanent injury because there has been no competent medical proof in this case that a left-hand tremor is a permanent injury.
After this instruction, plaintiffs' counsel requested that the trial court further charge the jury that they may consider the left-hand tremor as an element of plaintiff's temporary damages. *474 The trial court, however, gave no further instructions on this issue.
Plaintiffs allege that "[b]y telling the jury there was `not going to be any medical proof that the left hand tremor is permanent,' the [trial] [c]ourt confused the issues of causation and permanence and erroneously influenced the jury's perception of the kind of proof needed to establish future disability." We are satisfied that the charge, taken as a whole, did not misinform the jury regarding the concept of permanency. It strains credulity to think that instructions, given days earlier, could render confusing the charge to the jury at the end of the case. Furthermore, because the notion of permanency is within the ken of most ordinary jurors, an instruction on permanency, although not as exact as would be desired, is unlikely to have engendered confusion.
Consequently, considered in its entirety, the trial court's instruction concerning the issue of permanent injury was not erroneous.

II.
Plaintiffs also contend that the trial court erred in refusing to instruct the jury that lost future earning capacity may be considered in fixing the infant plaintiff's damages. Plaintiffs requested the following charge concerning lost future earning capacity:
As an additional item of damages, you may consider the impact of the infant plaintiff's injuries on his future earning capacity, if any. In this regard you should keep in mind the instruction I previously gave you with respect to pain and suffering. Ther[e] is no precise yard stick for a child of these tender years but you should use your good judgment and experience.
The trial court refused to honor this request and plaintiff cite error in the failure to do so.
We are satisfied that the trial court properly refused to instruct the jury with respect to impaired future earning capacity. It is fundamental law in this State that a plaintiff may not recover damages relating to the future consequences of a *475 tortious injury unless the proofs establish with reasonable probability the nature and extent of those consequences. In Budden v. Goldstein, 43 N.J. Super. 340, 346-347 (App.Div. 1957), we explained the rule as follows:
In the admeasurement of damages, it is well known that no recovery can be allowed for possible future consequences of an injury inflicted by a wrongdoer. Bernadsky v. Erie R. Co., 76 N.J.L. 580, 581 (E. & A. 1908); Houston v. Traphagen, 47 N.J.L. 23 (Sup.Ct. 1885); 20 Am.Jur., Evidence, § 863 (1939); 25 C.J.S., Damages, § 149 (1941). In order for suggested future results to be includible as an element of damage, it must appear that they are reasonably certain or reasonably probable to follow. Kimble v. Degenring, 116 N.J.L. 602, 604 (Sup.Ct. 1936); Wolcott, Johnson & Co. v. Mount, 36 N.J.L. 262, 272 (Sup.Ct. 1873), affirmed 38 N.J.L. 496 (E. & A. 1875); 15 Am.Jur., Damages, § 24 (1938); 20 Id., Evidence, § 863; 25 C.J.S., supra, § 31, Annotation, 81 A.L.R. 423 (1932).
The A.L.R. annotation, supra, indicates that many of the authorities throughout the country use the expression "reasonably certain" or "reasonable certainty" as the test and consider "reasonably probable" or "reasonable probability" inadequate and erroneous; others accept the latter statement. Our cases do not seem to have dealt specifically with the question of whether the two have the same significance in relation to quantum of proof, and so may be used interchangeably. It seems to us that in a resolution of the conflicting interests involved, reasonable probability is the just yardstick to be applied. Basically, our view comes down to this: a consequence of an injury which is possible, which may possibly ensue, is a risk which the injured person must bear because the law cannot be administered so as to do reasonably efficient justice if conjecture and speculation are to be used as a measure of damages. On the other hand, a consequence which stands on the plane of reasonable probability, although it is not certain to occur, may be considered in the evaluation of the damage claim against the defendant. In this way, to the extent that men can achieve justice through general rules, a just balance of the warring interests is accomplished.
See also Grassi v. Pennsylvania R.R., 86 N.J. Super. 48, 54 (App.Div. 1964), certif. den. 44 N.J. 411 (1965); Marty v. Erie R.R. Co., 62 N.J. Super. 458, 469 (App.Div. 1960), certif. den. 33 N.J. 387 (1960).
In Coll v. Sherry, 29 N.J. 166 (1959), our Supreme Court set forth the specific burden of proof cast upon a plaintiff in order to permit a jury to consider impaired future earning capacity when assessing damages in a personal injury case. There, the Court explained:
Here again, we are in the realm of prospective consequences of a tortious injury and the rules and considerations previously expressed apply with equal *476 vigor. We need not refer to the evidence nor determine the precise question. Suffice it to say that if plaintiff introduces evidence showing there is a reasonable probability that his injuries will impair his future earning capacity, and sufficient factual matter upon which the quantum of diminishment can reasonably be determined, the jury may properly be instructed that it can consider this item in establishing damages. [Id. at 176 (Emphasis in the original)].
To have been entitled to a jury charge that lost future earning capacity should be considered as an element of damages, plaintiffs here would have had to introduce evidence establishing not only a reasonable probability that the infant plaintiff's injuries would impair his future earning capacity, but also a sufficient factual basis upon which such diminution could be reasonably quantified. Plaintiffs failed to offer the requisite proofs. Although plaintiffs' expert, Dr. Haggerty, testified that the infant plaintiff's motor impairment may preclude him from pursuing employment requiring manual dexterity, and defendant's expert, Dr. Somberg, testified that the infant plaintiff's impairment would hinder him in playing the piano or other endeavors which require a keen sense of touch, this evidence did not meet the burden set forth in Coll, supra. This testimony is of a general nature and does not establish with any degree of probability that the infant is likely to suffer some future loss of earning capacity or the amount thereof. In our view, satisfaction of the Coll standard would have required presenting testimony of a medical, economic or employment expert which specifically addressed and established those facts. Only then could a jury have found a reasonable probability that the infant's future earning capacity would be impaired and have reasonably calculated the amount of any such loss.
We recognize that exigencies may justify relaxation of this evidentiary burden in certain situations. For example, in the absence of the type of proof required by Coll, supra, juries have been allowed to rely upon common experience in determining the nature and value of the services lost by a parent as a result of the death or injury of a child. See Green v. Bittner, 85 N.J. 1, 15 (1980); Simmel v. N.J. Coop Co., 28 N.J. 1, 15-16 *477 (1958). However, in Coll, supra, our Supreme Court did not recognize a claim for lost future earning capacity as another exception to the general rule. To the contrary, to ensure that a jury is not left to speculate when assessing damages in personal injury cases, the Coll court spelled out the proof a plaintiff must adduce before the issue of lost future earning capacity may be submitted to a jury.

III.
Finally, we are satisfied that the jury's verdict was not inadequate or against the weight of the evidence. Here, considerable expert testimony was presented by both plaintiffs and defendant. Two of plaintiff's experts, Dr. Haggerty and Dr. Blank, emphasized the gravity of the infant plaintiff's injury and his disability stemming therefrom. In contrast, defendant's experts, Dr. Effron and Dr. Somberg, although conceding the seriousness of the infant plaintiff's injuries, were of the opinion that the infant plaintiff had shown remarkable progress and would continue to improve. In light of the conflicting medical testimony, we cannot say that the jury's verdict was so inadequate that it was a miscarriage of justice under the law. The verdict does not require appellate intrusion. See Baxter v. Fairmont Food Co., 74 N.J. 588, 603-604 (1977); Taweel v. Starn's Shoprite Supermarket, 58 N.J. 227, 236-237 (1971). In cases such as this, "where the error asserted is largely a matter of how much weight should be accorded the expert medical testimony of the physicians appearing for either side," Coll, supra, 29 N.J. at 173, a reviewing court should be especially reluctant to disturb the jury's verdict. In light of this principle, we affirm the infant plaintiff's award of $150,000.
Accordingly, the judgment under review is affirmed.
LANDAU, J.S.C. (temporarily assigned), dissenting.
I respectfully dissent from that portion of the majority opinion which affirms the court's refusal to charge, as plaintiffs *478 requested, that the jury may consider the impact of the infant plaintiff's injuries on his future earning capacity. Citing Coll v. Sherry, 29 N.J. 166 (1959), the majority has held that infant plaintiff here failed to establish not only a probability of impairment of his future earning capacity but also a sufficient factual basis upon which diminution could be reasonably quantified.
What is reasonably quantifiable in one circumstance may not be reasonable in another. Loss of earning capacity of an employed adult, considered in Coll, is susceptible to measurement by methods of projection more definite than can reasonably be applied in the case of an infant whose aptitudes, skills, capacity and inclinations have yet to meet worldly tests. In adult cases we should require more to establish loss of future earning capacity than in the case of an infant. The proof in this case, if believed, would establish that Paul Lesniak has suffered motor impairment which the experts agreed will affect his future employment in jobs requiring manual dexterity. This should permit the jury to infer that loss of income is probable. The probability of some loss should be sufficient to submit the issue to the jury. (See Simmel v. N.J. Coop Co., 28 N.J. 1, 15 (1958)).
In this case, plaintiff has not argued that the jury should be permitted to infer loss of income merely from proof of the nature of the injury.[1] Rather the medical experts have specifically addressed, in a general sense, the probable impact of the injury upon tasks requiring manual dexterity. The majority would require additional expert testimony to meet the quantification test imposed by Coll. While I would not preclude such expert testimony, it should not be mandatory in a case such as this. The court's charge itself can contain sufficient guidelines *479 respecting factors such as present value and life expectancy. As to the "medical, economic or employment expert" which the majority would require, I believe that such expertise would at most be helpful to the triers of fact. The problem is that no one, expert or not, can say with probability what type of work an infant plaintiff would otherwise have performed. I believe that the jury in this case should have been directed to address the question of damages together with the specific question of whether the infant plaintiff's future earnings probably would be affected. I would entrust quantification of such impact, in the case of a pre-employment infant, to the common sense of the jury.
Inasmuch as the failure to grant the requested charge could have materially affected the quantum of damages, it cannot be viewed as harmless error. I would, accordingly, reverse and remand for new trial on the issue of damages only.
NOTES
[1] Interestingly, other courts would appear to permit this. See, e.g., Shepard v. General Motors Corporation, 423 F.2d 406 (1 Cir.1970); Allen v. Bonnar, 22 Wis.2d 221, 125 N.W.2d 570 (1964); Hartseil v. Calligan, 40 Ill. App.3d 1067, 353 N.E.2d 10 (1976); Huff v. Condell Memorial Hospital, 4 Ill. App.3d 352, 280 N.E.2d 495 (1972); Redmond v. Huppertz, 71 Ill. App.2d 254, 217 N.E.2d 85 (1966).