MARY CAPONE, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF HARRY CAPONE, DECEASED, PLAINTIFF-RESPONDENT, v. HENRY K. NORTON, TRUSTEE OF THE PROPERTY OF NEW YORK, SUSQUEHANNA & WESTERN RAILROAD COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

PETER PANEPINTO, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF JEAN PANEPINTO, DECEASED, PLAINTIFF-RESPONDENT, v. HENRY K. NORTON, TRUSTEE, ETC., DEFENDANT-APPELLANT.

RIDGEWOOD CLEANERS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. HENRY K. NORTON, TRUSTEE, ETC., DEFENDANT-APPELLANT.

Argued September 17, 1951—Decided October 15, 1951.

56

Mr. *Charles S. Barrett, Jr.,* argued the cause for the appellant (*Messrs. Lum, Fairlie & Foster,* attorneys).

Mr. *Louis Santorf* argued the cause for the respondents Mary Capone and Peter Panepinto (*Mr. John A. Masiello,* attorney for Mary Capone; *Mr. Benjamin P. Galanti,* attorney for Peter Panepinto).

Mr. *Harry Nadell* argued the cause for the respondent Ridgewood Cleaners, Inc. (*Messrs. Cole, Morrill & Nadell,* attorneys).

The opinion of the court was delivered by

ACKERSON, J. These cases arose out of a collision between an automobile owned by Ridgewood Cleaners, Inc., and a diesel engine of the New York, Susquehanna & Western Railroad Company at a grade crossing in the City of Paterson on June 19, 1948, resulting in the deaths of Harry Capone, driver of the automobile, and Jean Panepinto who was riding with him. Each decedent was 27 years old and unmarried.

Three separate actions were instituted in the Superior Court, Law Division, against Harry K. Norton, trustee of the railroad company: one by Mary Capone, administratrix *ad prosequendum* of the estate of Harry Capone, another by Peter Panepinto, administrator *ad prosequendum* of the estate of Jean Panepinto, and the third by Ridgewood Cleaners, Inc., for damage to its car. These actions were consolidated for the purpose of trial and resulted in verdicts for the plaintiffs of $28,200 in the Capone case, $42,000 in the Panepinto case and $1,775 in the Ridgewood Cleaners case.

On motions by the defendant for a new trial, the court found that the damages assessed in the death actions were excessive and gave the plaintiffs the alternative of accepting reductions in the amounts of their respective verdicts or a new trial, the reductions being to $24,000 in the Capone case and $34,000 in the Panepinto case. These reductions were accepted and judgments in the reduced amounts were accordingly entered. The motion as to Ridgewood Cleaners, Inc., was denied.

Appeals by the defendant to the Appellate Division of the Superior Court were consolidated for argument and resulted in the affirmance of the judgment in the Ridgewood Cleaners, Inc., case and the reversal of the judgments in the Capone and Panepinto actions solely on the ground that the damages awarded were so excessive as to require a new trial limited to the single issue of damages.

On the petition of the defendant, trustee of the railroad company, and the cross-petition of the plaintiffs in the two death actions, we granted certification to review the judgments so entered in the Appellate Division.

The first point argued by the defendant on his appeal is that the trial court erred in allowing the testimony of witnesses whose names had not been furnished in response to interrogatories served by the defendant upon the plaintiff in each of the death actions pursuant to *Rule* 3 :33. The interrogatories were identical and demanded that the plaintiff in each case "Furnish the names and addresses of any and all

witnesses to the said accident." The interrogatories were filed February 4, 1949, before defendant made answer to the Capone and Panepinto complaints which were filed January 26, and 25, 1949, respectively. In the Capone case, the plaintiff's answer, filed February 18, 1949, stated: "I personally do not know the names and addresses of any witnesses to the said accident." The answer in the Panepinto case, filed March 7, 1949, stated: "The only witness to the accident that deponent knows of is Louis Friedman Esq. of 64 Hamilton Street Paterson New Jersey," who, incidentally, was not called as a witness at the trial. The record does not reveal that any such interrogatory was served upon the plaintiff, Ridgewood Cleaners, Inc. On February 25, 1949, defendant moved for an order compelling "a complete answer" to the above quoted interrogatory in the Capone case, which motion was denied.

At the trial of the consolidated causes, which took place early in March, 1950, more than a year after the answers to the foregoing interrogatories had been filed, plaintiffs produced two eye-witnesses to the fatal accident whose names had not been set forth in said answers. One of these was Elizabeth J. Barker and defendant objected to her giving any testimony with reference to the occurrence because her name had not been given in response to the interrogatories, and the objection was overruled. No similar objection seems to have been interposed to the testimony of the other witness so produced. Defendant did not contend 'in the trial court, or in his brief or at the oral argument in this court, that the plaintiffs withheld the names of witnesses known to them or their attorneys at the time the answers to the interrogatories were made or at the time the above mentioned motion for a more complete answer to the specified interrogatory in the Capone case was denied, and no additional interrogatories to elicit any later information on the subject were served at any time throughout the year which elapsed before the trial.

Defendant argued in the trial court, as he does here, that the true interpretation of *Rule* 3:33 required the plain-

tiffs, upon learning of additional witnesses, either directly or through their attorneys, to supplement their answers to the interrogatories by giving such later information. *Rule* 3:33, by reference to *Rule* 3:26–2, permits inquiry as to the "identity and location of any person having knowledge of relevant facts." However, we find nothing in *Rule* 3:33, as it stood at the time of this trial in March, 1949, which either expressly or by implication required a party to voluntarily supplement his answers to interrogatories by supplying the names of witnesses thereafter discovered by him or his attorney. Indeed, the rule indicates to the contrary, for it is therein provided that there is no limit to the number of interrogatories which may be served, "except as justice requires to protect the party from annoyance, expense, embarrassment, or oppression." Therefore, if a party seeks later information after his first interrogatories have been answered, he is free, within the specifications of the rule, to serve additional interrogatories or bring up the subject at the pretrial conference. The ruling in *Evtush v. Hudson Bus Transportation Co.*, 7 *N. J.* 167 (1951), gives no support whatever to the defendant's contention since in that case it appeared the defendant had knowledge of the existence and names of witnesses before answering interrogatories and failed to disclose them. It is to be noted that *Rule* 3:33 was amended on June 7, 1951, so as to require the filing of supplemental answers to interrogatories under specified conditions, and, although the amendment is not applicable to the present case because adopted subsequent to the trial thereof, nevertheless, it is persuasive of the correctness of our interpretation of the original rule.

Therefore, under the circumstances revealed by the record before us, we find no reversible error in the trial court's rulings hereinabove considered.

We come now to consider the legal propriety of the action of the Appellate Division of the Superior Court in reversing the judgments in the two death actions on the ground that the verdicts therein were excessive, and in remanding them

for retrial on the issue of damages only. Both the defendant's appeal and the joint cross-appeal of the plaintiffs challenge different phases of such rulings.

The cross-appeal is directed to only one point, in which it is contended that the trial court's decision that the damages in the death actions were excessive and reducing the amounts thereof to the sums eventually accepted by the plaintiffs therein, being in the exercise of the court's discretionary power, is final unless the court was guilty of an abuse of discretion constituting a shock to reason and to justice, and, since the Appellate Division did not make such a finding, it was error to have reversed the judgments in their reduced amounts and to have remanded the causes for a new trial as to damages only upon any other basis than abuse of discretion, citing in support thereof *Nelson v. Eastern Air Lines, Inc.,* 128 *N. J. L.* 46 (*E. & A.* 1941) and *Batts v. Joseph Newman, Inc.,* 3 *N. J.* 503 (1950). The complete answer to this contention, however, is to be found in our more recent decision in *Hager v. Weber,* 7 *N. J.* 201 (1951) where practically the same question was presented. There, as here, we were called upon to determine the test to be applied by an appellate court, within constitutional limitations, in deciding when a verdict, which is claimed to be excessive, should be set aside as "contrary to the weight of the evidence" pursuant to *Rule* 1:2–20(*a*), made applicable to the Appellate Division by *Rule* 4:2–6, as the rule stood prior to its amendment on June 7, 1951. It was there held that in making such determination, "the trial judge and the appellate tribunal are controlled by the same criterion," and the inquiry for each is whether or not the verdict is "so excessive as irresistibly to give rise to the inference of mistake, passion, prejudice, or partiality, and by that standard to be palpably against the weight of the evidence." In the course of the opinion it was said that (at *page* 210):

"* * * The appellate tribunal cannot invade the constitutional office of the jury; it may not merely weigh the evidence where it is fairly susceptible of divergent inferences and substitute its own

judgment for that of the jury. But, if the verdict be so far contrary to the weight of the evidence as to give rise to the inescapable conclusion of mistake, passion, prejudice, or partiality, it cannot serve to support the judgment, and appellate correction of the error is not an interference with the constitutional security of the inferior court or the attribute of finality on the facts inherent in its judgments or the constitutional right of trial by jury."

Accordingly, in the instant cases it was not necessary for the Appellate Division to determine whether or not the trial court abused its discretion, and its finding that "the size of the verdict indicates a mistake as to the nature of the award, or else indignation aroused by what the jury considered was clear proof that the negligence of defendant's servants had caused the fatal accident," was sufficient, under the test approved in *Hager v. Weber, supra,* to warrant the remand of the death actions with respect to the issue of damages. It is to be noted that *Rule* 1:2–20(a) was amended on June 7, 1951, after the decision in the *Hager* case, to substantially incorporate the test approved therein.

The defendant, on the other hand, contends that the amounts awarded by the jury in the death actions were so excessive (the size of the award in the Ridgewood Cleaners case is not challenged) as to indicate they were the product of "mistake, passion or prejudice" which vitiates the verdicts in their entirety, including the basic finding of liability, thereby, requiring a new trial of all issues in all of the actions.

We agree that on the evidence the verdicts in the death actions were clearly excessive. While we shall not attempt to detail the evidence, or lack of it, which leads to this conclusion, since we are satisfied with the summarization, analysis and evaluation of it appearing in the opinion of the Appellate Division, nevertheless we think it important to point out that while each of the decedents was 27 years old and unmarried, there was no proof as to the income or earning capacity of either of them so as to afford any measure by which to judge whether or not the claimed contributions to their parents (concerning which the evidence was very unsatisfactory) were within probable limits, and the prospective continuity and

duration thereof. Furthermore, while it appeared in the Capone case that the ages of the surviving father and mother were 71 and 66 years respectively, and in the Panepinto case, 53 and 50, nevertheless, there was no proof of the life expectancy of any of them or, for that matter, of any other of the next of kin. This was an important factor for consideration under the Death Act (*R. S.* 2:47–5) where the damages are measured by the "pecuniary injuries resulting from such death to the widow, surviving husband, and next of kin of the deceased."

Although the verdicts in the death actions were clearly excessive, we do not consider the size of the awards as indicating any infirmity in the determination of the basic issue of liability, but rather mistake on the part of the jurors in comprehending and applying the only measure available to them for the assessment of damages in a death action, *i. e.,* "such damages as they shall deem fair and just with reference to the pecuniary injuries resulting from such death" to the specified survivors (*R. S.* 2:47–4), which has been uniformly interpreted to mean "a deprivation of a reasonable expectation of a pecuniary advantage which would have resulted by a continuance of the life of the deceased." *Paulmier, adm'r. of Carhart v. Erie R. R. Co.,* 34 *N. J. L.* 151, 158 (*Sup. Ct.* 1870); *Demarest v. Little,* 47 *N. J. L.* 28, 30 (*Sup. Ct.* 1885); *Graham v. Consolidated Traction Co.,* 64 *N. J. L.* 10, 13 (*Sup. Ct.* 1899). A difficult task is thereby imposed upon the jurors for they must of necessity "weigh probabilities, and to a large extent form their estimate of damages on conjectures and uncertainties," a process susceptible of many errors. *Marendino v. Spitz,* 121 *N. J. L.* 556, 558 (*E. & A.* 1938); *Paulmier, adm'r. of Carhart v. Erie R. R. Co., supra; Demarest v. Little, supra.* The record before us clearly indicates that it was in the performance of this difficult task that the jury in the case *sub judice* went astray and that this infirmity, while necessitating a new trial as to the amount of damages, did not affect the other issues involved. At the trial the issues of negligence and contributory negligence centered

around proofs submitted by the parties as to whether or not the operators of the railroad train had given any signal of its approach to this grade crossing, as required by *R. S.* 48:12–57, and whether or not the crossing gates had been lowered. Several witnesses testified for each side upon these subjects and plaintiffs' proofs with respect thereto were cogent and amply supported the finding of the jury with regard to the defendant's liability.

The case of *Esposito v. Lazar*, 2 *N. J.* 257, 261 (1949) is not helpful to the defendant's contention that the new trial should be *in toto*, for there it appeared the jury resolved the question of defendant's liability, which was "extremely in doubt," by awarding grossly inadequate damages by way of compromising the issue of liability and this, of course, vitiated the entire verdict.

When a new trial is necessary, it may be limited to the question with respect to which the verdict is found to be wrong. If separable and if the error relates solely to the question of damages, it may be set aside as to damages only. *Rule* 3:59–1; *Paolercio v. Wright*, 2 *N. J.* 412, 417 (1949). In the instant case the error relates solely to the assessment of the damages and it is clear that the Appellate Division did not err in limiting the new trial in the death actions to damages only and in affirming the judgment in favor of the Ridgewood Cleaners, Inc.

Finally, defendant argues that the trial court erred in denying his supplementary motion for a new trial on all issues because of the conduct of one of the jurors which came to defendant's attention after notice of the original motion had been served. The supplementary motion included a statement that defendant also would move, "if the court deems it necessary, to take the deposition of one or more of the jurors who sat."

Defendant presented in support of this motion the affidavit of a private detective, employed by the defendant's attorneys, in which the affiant stated he had interviewed two of the jurors shortly after the trial and was informed by

them that a fellow juror had told them, during the course of the trial, that he "had arrived at the scene of the accident, * * *, within approximately fifteen minutes after it had occurred." This is all of the evidence offered as to the conduct of the juror in question. There is no indication in this affidavit that the juror was guilty of any misconduct whatsoever, or that he communicated any information to his fellow jurors other than the fact that he had come upon the scene of the accident some time after it had occurred, or that, upon examination as a prospective juror, he had been interrogated about, or had answered untruthfully concerning, any previous knowledge of the case or his ability to decide the case fairly on the evidence produced. It is important to notice again, in this connection, that practically the only issues which went to the question of defendant's negligence were whether or not the statutory crossing signals had been given and the crossing gates properly operated immediately before the accident. As to these matters the juror came upon the scene too late to have any personal knowledge.

Therefore, under the foregoing circumstances, there was no denial of defendant's right to a fair trial by an impartial jury, and no error, in the exercise of the trial court's discretionary powers in such matters, by its refusal to grant a new trial as to all issues in the consolidated actions on the specified grounds.

The judgment of the Appellate Division of the Superior Court is accordingly affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices BURLING and ACKERSON—3.

*For reversal*—Justices CASE and OLIPHANT—2.