SILAS COLL, PLAINTIFF-APPELLANT, v. ARTHUR SHERRY, DEFENDANT-RESPONDENT.

Argued January 5, 1959—Decided February 16, 1959.

Mr. *Harry Chashin* argued the cause for appellant (*Messrs. Marcus & Levy,* attorneys).

Mr. *George F. Losche* argued the cause for respondent (*Messrs. Losche & Losche,* attorneys).

The opinion of the court was delivered by

WACHENFELD, J.   A verdict of $1,500 was returned in favor of the plaintiff, Silas Coll, in this personal injury and property damage suit arising out of an automobile collision.  The trial judge denied his motion for a new trial and he thereupon appealed to the Appellate Division, alleging that the damages awarded were inadequate and that several trial errors had adversely affected the amount of his recovery. The Appellate Division affirmed the judgment, and we granted plaintiff's petition for certification.

The accident occurred at about 3:00 P. M. on January 15, 1955.  Plaintiff, the proprietor of a retail chicken and egg business, was engaged in making deliveries to the various customers on that day's route.  He was driving a sedan delivery truck loaded with crates of eggs.  Defendant, Arthur Sherry, was operating his motor vehicle immediately behind the plaintiff's.

Sherry testified that he and Coll had stopped for a red light at the entrance to the Lincoln Avenue Bridge, which spans the Passaic River in Paterson.  It was either snowing at the time or had recently been snowing.  The roadway was wet and had some snow on it.

After the stop light had changed to green, both drivers started across the bridge.  They had gone about half way when Sherry momentarily glanced at the river to see whether there were any ducks on it.  Upon returning his eyes to the road, he saw Coll's truck standing motionless in front of him.  Sherry applied his brakes and tried to turn out to the left, but his vehicle skidded and struck the rear of plaintiff's truck with a moderately severe impact.  Sherry stated he had been proceeding at approximately 10 to 15 miles per hour when he looked at the river and that plaintiff's truck was then about 20 feet in front of him.

Coll testified that he had stopped because of traffic congestion and that the force of the collision had pushed his truck forward into the rear of the car in front of him.  He stated the driver of that automobile had alighted and ascertained that there was no serious damage to his car, where-

upon he drove away without giving any identification. The rear door and bumper of Coll's truck were dented, and he testified that the front bumper, a front fender and his grill were also damaged.

With respect to personal injuries, plaintiff asserted the force of the two collisions had snapped his neck back and forth and thrown him against the lefthand truck door, which had sprung open, causing him to fall to the roadway. Defendant disputed this and said that after the impact Coll had climbed out of his truck.

Plaintiff did not obtain medical care until two days after the accident. His original complaints were of stiffness in the back of the neck and pain in the left shoulder. Some months thereafter, he also complained of diminished sensation in the little finger and adjacent lower half of the fourth finger on his left hand. As of the time of trial, two years and ten months later, his persisting symptoms were described as numbness of the little and fourth fingers of the left hand; neck pains upon extremes of motion; pains in the left shoulder when that arm was raised; and headaches at the back of the neck attendant upon heavy lifting. In the interim, for approximately six months, plaintiff had worn a leather collar, during his leisure moments, to support his neck. He did not lose any time from work as a result of the accident, and he said his condition had improved considerably.

Plaintiff presented four medical experts, and defendant produced two. The orthopedic evaluation of Coll's shoulder injury was calcific bursitis of the supraspinatus tendon, permanent in nature and traumatic in origin. Coll's orthopedist stated that this condition, apparent from X-rays, was causally related to the blow plaintiff's shoulder had sustained in the accident and that it was due to metabolic changes occasioned thereby. One of defendant's physicians diagnosed the shoulder injury as a myositic nodule, described as either hardened scar tissue or an undissolved blood clot within the muscle, but upon being confronted with the hitherto unseen X-rays, conceded that they showed an opacity

above the supraspinatus tendon, usually connoting calcification. Defendant's other medical witness stated that upon examination he had found tenderness over the upper border of the left trapezius muscle, which lies in the shoulder region, but he did not give any diagnosis resulting from his findings.

With respect to the neck injury, the physician who had treated plaintiff originally described it as a whiplash sprain of the cervical portion of the spine. The examining orthopedist who testified for plaintiff confirmed the existence of a whiplash syndrome and said there had been a narrowing of the interspaces, attributable to trauma, between the fourth and fifth cervical vertebrae and the seventh and eighth cervical vertebrae. He felt that this condition had affected the nerve structure. The radiologist produced by plaintiff testified to the traumatic nature of the vertebral changes as they were reflected by X-rays. He pointed out the existence of "spurring" on the cervical vertebral bodies and said that the foraminal spaces or holes, through which the nerves issue from the spine, had diminished considerably in size, particularly on the left side. The plaintiff's neurosurgeon, Dr. Jacobson, said he felt that plaintiff had sustained an injury to the disc between the fourth and fifth cervical vertebrae but that, in his opinion, the principal source of plaintiff's continuing debility was a herniation of the disc between the seventh cervical and first thoracic vertebrae, revealed by Coll's medical history, his physical examination and the unusual narrowing of the interspace there as shown on X-rays. He attributed the numbness in plaintiff's left hand to the pressure of a permanent extrusion of the inner body of this disc against a nerve. Defendant's physicians said simply that Coll was suffering from the residual effects of a strain of the neck and had a cervical whiplash syndrome. Dr. Effron stated that narrowing of the interspaces naturally occurs as a result of normal "wear and tear," that objective tests had not revealed any loss of sensation in plaintiff's left hand, and that some of his continuing complaints of pain were probably "emotional" and not somatic in origin.

Plaintiff first maintains that the amount of the verdict was clearly inadequate and against the weight of the evidence. He points out that the bill for repairs to his truck was $194, the treating physician's bill $125, and the charge for X-rays $80. When these sums are deducted from the total recovery, they leave $1,100 attributable to personal injuries and the concomitant pain and suffering, past, present and projected.

The function of an appellate tribunal in reviewing the adequacy of a verdict was concisely set forth in *Wytupeck v. City of Camden,* 25 N. J. 450, 466 (1957), where we said:

"The appellate tribunal cannot invade the constitutional office of the jury; it may not merely weigh the evidence where it is fairly susceptible of divergent inferences and substitute its own judgment for that of the jury; there may be judicial intervention only if the verdict is so far contrary to the weight of the evidence as to give rise to the inescapable conclusion of mistake, passion, prejudice or partiality. *Hager v. Weber,* 7 N. J. 201 (1951)."

Here, defendant's expert medical witnesses conceded the existence of a whiplash syndrome but minimized its effects, pointing out that Coll's condition had measurably improved since the date of the accident and giving as their opinion that his prognosis was good. They denied that the alleged narrowing of the cervical interspaces was particularly significant or indicative of traumatic injury and refuted the existence of any verifiable numbness in the left hand. Although all of the doctors agreed there was some injury to the left shoulder, the physicians appearing for defendant did not regard it as seriously debilitating. Their testimony, taken together with the facts that Coll had not lost one day from the work in which he was required to lift 60-pound crates, that the impact between plaintiff's and defendant's vehicles was only moderately severe, that no one could corroborate the collision between Coll's truck and the automobile in front of him, that Coll had allegedly said after the collision that he was "all right," and that Sherry denied that Coll had fallen from his truck, may have induced the jury to

conclude that plaintiff was overemphasizing the extent of his suffering and that some of the injuries were not attributable to the accident.

■■ The trial judge is customarily in a better position than we to decide whether justice was done under the particular circumstances present in the case and in light of the weight of the credible evidence. After seeing and hearing the witnesses and observing their demeanor and reactions upon the stand, he refused to award a new trial on the issue of damages. Where new trials have been granted by trial judges, we have concluded that we will not reverse "unless it is clearly manifest that the action of the trial court was without basis in law or fact, or both, with the result that there was a denial of justice under the law." *Hartpence v. Grouleff,* 15 *N. J.* 545, 548 (1954). We experience a similar reluctance to disturb an order refusing a new trial where the error asserted is largely a matter of how much weight should be accorded the expert medical testimony of the physicians appearing for either side. In short, the record does not indicate there was an abuse of discretion here by the trial judge. *Cf. Fisch v. Manger,* 24 *N. J.* 66 (1957).

■ Dr. Jacobson, a neurosurgeon, testified that the disc between Coll's seventh cervical and first thoracic vertebrae had herniated, causing the soft center to protrude and press upon the eighth cervical nerve root, thereby producing the pain in the back of the neck, the numbness of the fingers of the left hand and the weakness of the muscles controlling them, all of which symptoms he claimed to have found. Dr. Jacobson testified this injury was "definitely permanent" and "well may become worse, especially with the normal aging process with his injury on top of it." He stated that only surgery could correct this condition, but that the procedure was difficult and not recommended at the present time since plaintiff had not become so incapacitated that he was unable to perform his normal duties.

Dr. Jacobson was then asked: "Doctor, what are the probabilities. if any, that the plaintiff will come to a stage where operation would be indicated or recommended by you?"

He replied: "The probability is good." The witness also asserted that the "very great probability" was that such an operation would benefit plaintiff. When plaintiff's counsel sought to inquire as to the expenses of such an operation and the extent of the period of disability resulting therefrom, the trial judge observed: "What the future may present this jury cannot speculate on." Thereafter, plaintiff's attorney again broached the matter by asking: "Would you say whether or not simply the probabilities are good or whether there is any medical certainty that he will in the future require operative treatment?" There was an objection and the court interposed an inquiry so that counsel's question remained unanswered. The subject was closed with the trial judge's comment that: "I think we had better keep out of that nebulous sphere."

We think the plaintiff was improperly precluded from pursuing a perfectly legitimate line of inquiry. It is well settled that damages may be recovered for the prospective consequences of a tortious injury. See, e. g., *Kimble v. Degenring*, 116 *N. J. L.* 602, 604 (*Sup. Ct.* 1936); *Annotation* 81 *A. L. R.* 423 (1932); 15 *Am. Jur., Damages*, § 24; 25 *C. J. S. Damages* § 29. And this rule applies to future medical care and treatment as well as to anticipated pain and suffering. In *Work v. Philadelphia Supply Co.*, 95 *N. J. L.* 193, 196 (*E. & A.* 1920), the Court of Errors and Appeals approved an instruction that plaintiff was entitled to recover "such reasonable outlay in the future as may be necessary to heal herself and her injuries." See also *Budden v. Goldstein*, 43 *N. J. Super.* 340 (*App. Div.* 1957).

Some accommodation must be made between the inability to foresee what will eventuate in the future and the principle that a plaintiff may not bring successive actions to recover for the results of a tortious personal injury as they unfold. See *Smith v. Red Top Taxicab Co.*, 111 *N. J. L.* 439 (*E. & A.* 1933). Accordingly, while allowing recovery for future damages, the courts have adopted various formulae to restrict the element of speculation and con-

jecture which may enter into a jury's assessment of them. Although the accepted verbal rituals are widely diversified, see *Annotation* 81 *A. L. R., supra,* we think that "reasonable probability" or its equivalent is sufficient. *Budden v. Goldstein, supra.* If the prospective consequences may, in reasonable probability, be expected to flow from the past harm, plaintiff is entitled to be indemnified for them. The amount to be awarded must largely be left to the good judgment of the jury.

Defendant claims that the whole interrogation relating to the probabilities of an operation being needed was improper and inadmissible since plaintiff had never been asked whether he would submit to surgery were it eventually recommended. We do not believe, however, that it was requisite for plaintiff to establish a foundation of "willingness" before he could embark upon an inquiry into the consequences of undergoing such operation.

The difficulty is primarily one of trial tactics. Here, as is normal, plaintiff preceded his physicians on the stand. At this juncture, the question of future medical care had not arisen and it would have been unintelligible and objectionable to inquire of him concerning his attitude toward surgery.

Plaintiff's inclination or disinclination to submit to operative procedures became relevant only after the presentation of the expert testimony setting forth that there was at least a reasonable probability that surgery would be required and recounting its ramifications and potentialities for success. The plaintiff could then, under these circumstances, have been recalled to the stand and interrogated with relation to his willingness to submit to the operation described if the necessity for it materialized. If plaintiff indicated that he would undergo such an operation and the value of his testimony was not destroyed by cross-examination, the jury could then have been permitted to consider the costs of such a procedure, and the attendant loss of wages and pain and suffering, as items of damage. See *Budden v. Goldstein, supra.*

At the oral argument in the Appellate Division, plaintiff's counsel admitted he had never discussed with his client whether or not he would be amenable to undergoing surgery. But this admission does not preclude plaintiff from urging that the trial judge's action in refusing to accept Dr. Jacobson's testimony was error. As stated previously, after plaintiff had heard Dr. Jacobson testify, he could properly have been recalled to the stand to assert whether or not he would submit to the operation described. The fact that plaintiff's counsel, up to that time, had not consulted Coll as to his willingness to be operated upon is not dispositive of the issue.

It was erroneous to close this avenue of inquiry to the plaintiff, and the size of his verdict may very well have been prejudiced thereby.

■ Plaintiff next submits that it was error for the trial judge to deny his request that the jury be instructed to take into account, in setting the amount of the verdict, "the effect, if any, of the occurrence and his injuries on his earning capacity in the future."

Here again, we are in the realm of prospective consequences of a tortious injury and the rules and considerations previously expressed apply with equal vigor. We need not refer to the evidence nor determine the precise question. Suffice it to say that if plaintiff introduces evidence showing there is a reasonable probability that his injuries will impair his future earning capacity, and sufficient factual matter upon which the *quantum* of diminishment can reasonably be determined, the jury may properly be instructed that it can consider this item in establishing damages.

Another objection is made to a portion of the charge dealing with proximate cause. We are not in accord with the invidious interpretation made by the plaintiff. When considered in context, we believe that the instruction in question was not improper and prejudicial. In any event, the problem will not recur if there is a new trial.

■ Plaintiff contends a new trial should be limited solely to the question of damages, and defendant maintains that

all issues should be submitted for redetermination by a jury. The rules governing this issue are readily discernible in our prior decisions.

The power to restrict a new trial to the sole issue of damages should be exercised with caution and only where it is apparent that the rights of the parties will not be unjustly affected thereby. *Kress v. City of Newark,* 8 *N. J.* 562 (1952). But when the error demanding reversal relates only to the *quantum* of recovery and it is apparent the issue of liability was clearly and properly decided against the defendant, we may, in our discretion, limit the new trial to the question of damages. *Fisch v. Manger, supra; Ruth v. Fenchel,* 21 *N. J.* 171 (1956); *Capone v. Norton,* 8 *N. J.* 54 (1951); *Rempfer v. Deerfield Packing Corp.,* 4 *N. J.* 135 (1950); *Paolercio v. Wright,* 2 *N. J.* 412 (1949).

Here, the matter of liability is obviously separable, it was without question decided correctly, and the verdict is not so inadequate as to reflect a compromise. Compare *Hendrikson v. Koppers Co., Inc.,* 11 *N. J.* 600 (1953); *Esposito v. Lazar,* 2 *N. J.* 257 (1949). Defendant admitted that under hazardous conditions he was traveling only 20 feet behind the plaintiff at 10 to 15 miles per hour when he averted his eyes from the road. When he looked back, plaintiff's truck had come to a dead stop. Certainly, plaintiff was not at fault for halting his vehicle, and even if the roadway had been dry and free from snow it is doubtful whether defendant could have checked his forward impetus in time to avoid the accident. In light of this evidence, the jury could hardly have come to a different conclusion on liability, and we see no need nor just purpose to be served in submitting the issue for redetermination.

Reversed and remanded for a new trial as to damages only.

*For reversal*—Chief Justice WEINTRAUB, and Justices WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—6.

*For affirmance*—Justice HEHER—1.