997 A.2d 1098 (2010)
414 N.J. Super. 204
Charles HAYWOOD and Lori Haywood, his wife, Plaintiffs-Appellants,
v.
Ricky HARRIS and Louis P. Sterlin, Defendants, and
New Jersey Manufacturers Insurance Company, Defendant-Respondent.
DOCKET NO. A-1120-09T3.
Superior Court of New Jersey, Appellate Division.
Argued April 20, 2010.
Decided July 2, 2010.
*1099 Harvey R. Pearlman, Rutherford, argued the cause for appellants (Friedman, Kates, Pearlman & Fitzgerald, P.A., attorneys; Mr. Pearlman, on the brief).
Gregory E. Peterson, Roseland, argued the cause for respondent (Connell Foley LLP, attorneys; Brian G. Steller, of counsel and on the brief; Mr. Peterson, on the brief).
Before Judges WEFING, GRALL[1] and MESSANO.
The opinion of the court was delivered by
MESSANO, J.A.D.
On December 9, 2005, plaintiff Charles Haywood was injured in a motor vehicle accident when an uninsured driver, defendant Ricky Harris, driving a car owned by defendant Louis P. Sterlin, ran a red light and collided with plaintiff's car.[2] Plaintiff filed a complaint for uninsured motorist (UM) benefits against his automobile insurance carrier, defendant New Jersey Manufacturers' Insurance Company (NJM), and proceeded to *1100 arbitration. NJM rejected the arbitration award, and the matter was tried before a jury.
NJM stipulated to liability. Plaintiff's insurance policy contained the limitation on lawsuit option, N.J.S.A. 39:6A-8a (the LOL). The case was tried, therefore, on three issueswhether plaintiff's claimed injury, a herniated disc at L1-L2, was proximately caused by the accident; whether it was "a permanent injury," ibid.; and damages. The jury concluded Harris's negligence was the proximate cause of plaintiff's injuries, but that he had not suffered a permanent injury. It therefore made no award to plaintiff for any "noneconomic loss." See N.J.S.A. 39:6A-2i. However, the jury awarded plaintiff $75,000 "for his loss of income and/or earning capacity. . . ."
When a form order for judgment was circulated, NJM objected, contending that since plaintiff had suffered no permanent injury, he was not entitled to any award for future lost earnings. It requested that the judge "mold" the verdict to conform to the proofs at trial. The judge entered judgment in favor of plaintiff for $27,878.50, an amount that only reflected plaintiff's claim for past lost wages between the date of the accident and the trial. Plaintiff's motion for reconsideration was subsequently denied, and this appeal followed.
Plaintiff contends for a variety of reasons that the judge should not have molded the verdict and urges our reinstatement of the original jury award of $75,000. NJM contends that the evidence adduced at trial only supported an award of lost wages for the amount reflected by the judgment as entered, though it also argues that plaintiff was barred as a matter of law from recovering any future economic losses. We have considered the arguments raised in light of the record and applicable legal standards. We affirm.

I.
The testimony at trial revealed that on the date of the accident, plaintiff was thirty-three years old, married with two children, and employed as a union mason. Plaintiff declined medical attention at the scene, but when the pain in his back worsened, he sought treatment with Dr. Frank Zaccaria, a chiropractor. Zaccaria ordered an MRI and diagnosed plaintiff with a herniated disc. Plaintiff moved from the northern New Jersey area and relocated to Tuckerton, during which time he continued treatment with another chiropractor. In 2007, plaintiff also saw Dr. Cary Glastein, an orthopedist, who recommended epidural injections, which plaintiff declined.
Plaintiff moved north in the fall of 2008 and began seeing Zaccaria again. Zaccaria testified that he last saw plaintiff approximately three weeks prior to trial, that plaintiff still complained of pain in his lower back, and that his prognosis was "pretty guarded." Zaccaria opined that plaintiff, as a result of the accident, was permanently injured and could no longer work as a mason. Dr. Steven J. Meyerson, a radiologist who interpreted the MRI films at trial, confirmed Zaccaria's diagnosis of a disc herniation.
On April 25, 2008, plaintiff was involved in a second accident while riding his motorcycle. Plaintiff fractured his femur and required surgery; plaintiff also suffered fractures of two thoracic vertebrae. However, plaintiff contended that he did not injure his lower back in this accident and any residual pain in his lower back and incapacity as a result was solely from the 2005 accident.
Plaintiff testified that in 2005, his earnings were appreciably lower than they had been the prior two years, both of which exceeded $28,000 each. He believed this was due to a general slowdown in the *1101 economy. Plaintiff tried to work after the accident, but pain curtailed his activities. He could no longer lift heavy brick and stone, and, instead, found some work caulking windows on job sites and supervising the work of others. His net earnings in 2006 and 2007, as reflected on his W-2 forms, were $5,911.75 and $10,909.50 respectively. In 2008, a W-2 form in evidence revealed that plaintiff received more than $14,000 in wages, and plaintiff testified that he began receiving temporary Social Security disability benefits that year due to injuries from the motorcycle accident.
NJM produced Dr. Steven Robbins, an orthopedic surgeon, as its expert. He testified that the MRI revealed a disc bulge in plaintiff's lower back, but no herniation. Robbins opined that this condition was normal for someone of plaintiff's age and work history.
After summations, the judge charged the jury in accordance with Model Jury Charge (Civil) 8.11C, "Loss of Earnings" (2004). He also reviewed the verdict sheet with the jurors. After deciding that Harris's negligence was the proximate cause of "the injuries suffered by plaintiff," the jury concluded that plaintiff had not "sustained a permanent injury as a result of th[e] accident . . . ." The verdict sheet directed the jury to proceed to answer whether plaintiff had lost "income or suffer[ed] an impairment of his earning capacity as a result of the injuries he received in this accident . . . ." The jury unanimously answered "yes." When asked "[w]hat amount of money w[ould] fairly and reasonably compensate [plaintiff] for his loss of income and/or earning capacity?", the jury answered "$75,000." There was no objection to either the charge or the jury verdict sheet.
NJM objected to the form order of judgment and sought oral argument. Although it never moved for a judgment notwithstanding the verdict (j.n.o.v.) or a new trial, NJM argued that "any claim for future lost income was barred, as a matter of law, upon the jury's finding that plaintiff had not suffered a `permanent injury' . . . ." NJM further contended that plaintiff's maximum recovery for past lost earnings in 2006 and 2007 was $27,878.50, which reflected the maximum difference between his average earnings for the three years prior to the accident, and his actual earnings for 2006 and 2007. NJM urged the judge to "mold the verdict in this manner to deny any claim for future lost earnings and to conform with [sic] the evidence on past lost earnings."
Plaintiff contended that N.J.S.A. 39:6A-8 does not require proof of a "permanent" injury to support a claim for future economic damages, including lost wages. Although the jury rejected his claim of a permanent injury as defined by statute, he argued that there was sufficient proof to support the jury's award because plaintiff was unable to return to work as a mason. He argued that the jury could have reasonably concluded that his injury "impair[ed] his ability to earn a living for some significant time in the future."
After considering oral argument, the judge reserved decision. He executed an order on August 28, 2009 that entered judgment in the amount of $27,878.50. On the order, the judge wrote:
The jury, having rejected plaintiff's claim of permanent injury[,] did not have sufficient evidence to support an award more than three (3) times the amount of lost wages in 2006 and 2007. Plaintiff's argument for future lost wages would have to be based on his claim of permanent injury w/in the meaning of N.J.S.A. 39:6A-8a which was rejected by the jury and awarded plaintiff income lost because of his injury. However, the award for lost income *1102 must be justified and understandable, and an award so disproportionate to the evidence would constitute an injustice. The jury must have some evidentiary basis for its award, and there is no evidence to support an award of $75,000 for lost income. The $27,878.50 represents the difference between plaintiff's average net wages for 2003, 2004, 2005, and the amount earned by plaintiff in 2006 and 2007, and is an accurate amount of lost income.
The judge subsequently denied plaintiff's motion for reconsideration, and this appeal followed.

II.
We need not address all of the specific arguments raised by plaintiff because we are convinced that they essentially frame only two issues that must be resolved. First, because the jury found that he did not suffer a permanent injury, are plaintiff's claims for lost earnings limited, as a matter of law, to past lost earnings, i.e., earnings lost between the date of the accident and the date of trial? For the reasons that follow, we conclude that the answer to that question is no. Second, did plaintiff present sufficient evidence to permit the jury to award an amount of damages for future lost wages that was not based upon speculation? We conclude that plaintiff did not present sufficient evidence. As a result, we affirm.
We are also convinced, however, that the model jury charge did not provide sufficient guidance to the jury, and, in conjunction with the jury verdict sheet, it had the capacity to confuse consideration of the issue. As a result, we refer the matter to the Model Civil Jury Charge Committee for further consideration and possible revision.

(a)
NJM initially argued before the trial judge, as it does before us, that plaintiff's claim for lost earnings is limited, as a matter of law, to past lost earnings because the jury concluded he suffered no permanent injury from the accident. We reject that argument, and to the extent the trial judge reached that conclusion, we believe that was error.
Since he chose the LOL option, plaintiff could only recover for "noneconomic loss" by proving "a bodily injury which result[ed] in death; dismemberment; significant disfigurement or significant scarring; [a] displaced fracture[]; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement." N.J.S.A. 39:6A-8a. "`Noneconomic loss' means pain, suffering and inconvenience." N.J.S.A. 39:6A-2i. "An injury [is] considered [to be] permanent when the body part or organ . . . has not healed to function normally and will not heal to function normally with further medical treatment." N.J.S.A. 39:6A-8a.
However, the LOL has no effect upon a person's claim for "economic loss." See N.J.S.A. 39:6A-2k ("`Economic loss' means uncompensated loss of income or property, or other uncompensated expenses, including, but not limited to, medical expenses."). "We have held that plaintiffs need not satisfy the [LOL] threshold to recover for economic loss." Miskelly v. Lorence, 380 N.J.Super. 574, 578, 883 A.2d 424 (App.Div.), certif. denied, 185 N.J. 597, 889 A.2d 444 (2005). "Even evidence of prospective income loss based on a career choice that was denied plaintiff because of the injury [i]s sufficient to defeat summary judgment as to `economic damages.'" Martin v. Chhabra, 374 N.J.Super. 387, 395, 864 A.2d 1155 (App.Div.2005) (citing Loftus-Smith v. Henry, 286 N.J.Super. 477, 489, 669 A.2d 852 (App.Div.1996)).
However, we have also recognized that if a plaintiff fails to prove a "permanent injury," *1103 there must be a limit upon any award made for future economic loss. "Future economic loss must depend upon an injury which affects plaintiff's ability to earn income in the future. Hence, where the claim is based on a permanent injury within the meaning of N.J.S.A. 39:6A-8a, there must be a `permanent injury' to sustain recovery beyond wages lost during a reasonable period of recuperation and recovery." Miskelly, supra, 380 N.J.Super. at 578, 883 A.2d 424 (emphasis added).
Thus, we conclude that plaintiff was not barred as a matter of law from making a claim for future lost wages resulting from injuries in this accident, but we also conclude that plaintiff's claim was limited to only those future wages lost for a "reasonable period of recuperation and recovery." Ibid.

(b)
We recognize, as we did in Miskelly, "that this case only applies to the particular claim before us and only with a[n] . . . injury where a `permanent injury' must be found." Id. at 579 n. 3, 883 A.2d 424 (citation omitted). And, as our discussion above makes clear, "in some cases[,] future lost wages may be deemed appropriate for a period of time even though the injury is not deemed to be `permanent' within the meaning of N.J.S.A. 39:6A-8a." Ibid. We affirm the judgment under review because in this case, plaintiff failed to adduce sufficient evidence to prove a loss of future wages resulting from the injuries suffered in this accident.
We begin by noting that if the jury's answers to questions on the verdict sheet contradict the award, the trial court can mold the verdict to comport with the jury's fact findings. See Grasser v. Kitzis, 230 N.J.Super. 216, 553 A.2d 346 (App.Div. 1988). That issue is typically addressed by way of a motion for judgment notwithstanding the verdict (j.n.o.v.). See R. 4:40-2. Such a motion "must be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in the plaintiff's favor." Riley v. Keenan, 406 N.J.Super. 281, 298, 967 A.2d 868 (App.Div.) (citing Lanzet v. Greenberg, 126 N.J. 168, 174, 594 A.2d 1309 (1991)), certif. denied, 200 N.J. 207, 976 A.2d 384 (2009). We apply the same standard upon our review. Barber v. ShopRite of Englewood & Assoc., 406 N.J.Super. 32, 52, 966 A.2d 93 (App.Div.), certif. denied, 200 N.J. 210, 976 A.2d 386 (2009). In doing so, we give deference to the jury's determination on issues of credibility and weight of the evidence. Alves v. Rosenberg, 400 N.J.Super. 553, 566, 948 A.2d 701 (App.Div.2008).[3]
Plaintiff argues that the jury award of $75,000 was supported by the evidence because the jury could have concluded that plaintiff's injuries, while not permanent, would prevent him from working as a mason for three years beyond the date of the verdict, i.e., $75,000 was roughly equivalent to plaintiff's lost wages in 2005 and 2006, and an additional three years of lost wages.[4] NJM contends that because plaintiff presented no testimony about the length and extent of a temporary impairment, any award for future lost wages was speculative.
It has long been recognized that a claim for future lost wages must be supported by two things: (1) "a reasonable *1104 probability" of such a loss flowing from the past harm; and (2) "sufficient factual matter upon which the quantum of diminishment can reasonably be determined." Coll v. Sherry, 29 N.J. 166, 176, 148 A.2d 481 (1959). The "`mere possibility'" of lost earning capacity is insufficient. See Lesniak v. County of Bergen, 117 N.J. 12, 24, 563 A.2d 795 (1989).
Arguably, plaintiff in this case presented evidence that he would no longer be able to work as a mason and was now relegated to doing odd jobs or supervising others, resulting in a diminution of his wages. However, the second Coll prong, evidence as to the quantum of lost earnings, was never provided. In order to sustain his claim, plaintiff needed to adduce sufficient proof so that "the jury could make a dollar-and-cents calculation of the loss." Lesniak, supra, 117 N.J. at 25, 563 A.2d 795. This he did not do.
Plaintiff testified that he earned less money after the accident because he could no longer work as a mason. He relied upon the opinion of his medical expert that he was unable to continue to work as he did before because of his disc herniation. The jury was entitled to reject Zaccaria's conclusion, and did, by finding that plaintiff's injuries were not permanent in nature. See Kozma v. Starbucks Coffee Co., 412 N.J.Super. 319, 327, 990 A.2d 679 (App. Div.2010) (noting that a jury is not required to accept the plaintiff's expert testimony regarding permanency). Plaintiff provided no other expert testimony regarding his claim for future lost wages; he also presented no expert vocational testimony regarding other employment opportunities that, taking his injuries into account, might be available, and the income they might generate.
More importantly, the jury had plaintiff's W-2 forms demonstrating his past lost wages; but, they also received a W-2 form that demonstrated plaintiff earned over $14,000 in 2008, apparently prior to his second accident in April of that year, and before he received Social Security temporary disability payments. In its post-verdict submission, NJM noted that plaintiff "conceded no lost wage claim for 2008." We have not been provided with a transcript of the summations of counsel, and we can find no concession in the transcript of the proceedings.
However, in responding to NJM's post-verdict submission, plaintiff argued only that the jury could consider the difference between his earnings in 2006 and 2007 "and make a determination as to the effect this would have on [him] in the future." Plaintiff renews this same argument before us. This forces us to conclude that the jury was never provided with any evidence that plaintiff's loss of earnings actually continued in 2008, and, by implication, beyond.[5] Without such evidence, and having concluded that plaintiff was not permanently injured, the jury lacked "sufficient factual matter upon which the quantum of diminishment c[ould] reasonably be determined . . . ." Coll, supra, 29 N.J. at 176, 148 A.2d 481.
As the trial judge noted, "[t]he jury must have some evidentiary basis for its award, and there [wa]s no evidence to support an award of $75,000 for lost income." *1105 Under the particular facts of this case, we therefore agree with the judge's decision to mold the verdict and affirm the judgment under review.

(c)
We briefly address an issue that is not critical to our disposition of this appeal, but that we believe should be referred to the Committee on Model Civil Jury Charges for further consideration because of the likelihood that it will continue to arise.
In every LOL litigation involving a claim of a "permanent injury," and an additional claim for future economic loss, the plaintiff is placed between the proverbial "rock and a hard place." In order to succeed on his claim for non-economic damages, he must adduce sufficient proof of a permanent injury under N.J.S.A. 39:6A-8a. Frequently, medical proof of that injury is complemented by specific proof of future lost wages or other economic damages. Unlike this case, that proof is often placed before the jury via the testimony of an economist and/or vocational expert.
The dilemma a plaintiff faces was highlighted by what occurred in this case. NJM has argued that plaintiff should have adduced proof before the jury of a limited future income loss assuming there was no permanent injury. We believe such an alternative is unrealistic, since plaintiff would need to convince the jury his permanent injuries were going to affect his future earnings over the course of his anticipated work life, and at the same time, attempt to convince the jury that if he was not permanently injured, he suffered some limited, finite loss of earnings. Employing such a strategy seems to doom both the non-economic and economic claims to failure.
The current model jury charge regarding future loss of earnings provides:
Plaintiff also seeks to recover earnings that will be lost in the future. Plaintiff has a right to be compensated for any earnings which you find will probably be lost as a result of the injuries brought about by defendant's wrongdoing.
If you decide from the evidence in this case that it is reasonably probable that plaintiff will lose income in the future, because [either] he/she has not been able to return to work [or] he/she has not been able to keep the same job [or] he/she will be able to work for a shorter period of time, then you should also include an amount to make up for those lost earnings. In deciding how much your verdict should be to cover future lost income, think about the factors mentioned in discussing past earning losses, such as the nature, extent and duration of injury. Also consider plaintiff's age today, his/her general state of health before the accident, how long you reasonably expect the loss of income to continue and how much plaintiff can earn in any available job that he/she physically will be able to do. Obviously, the time period covering plaintiff's future lost earnings cannot go beyond that point when it was expected that he/she would stop working because of retirement, if plaintiff had not been injured. You should also consider the probabilities of increases in earnings resulting from raises for productivity or promotion, and plaintiff's life expectancy and work-life expectancy before the injury.
But you should be aware that the figures that you have been given on life expectancy and work-life expectancy are only statistical averages. Do not treat them as necessary or fixed rules, since they are general estimates. Use them with caution and use your sound judgment in taking them into account.

*1106 For future lost earnings, as well as past lost earnings, you must base your decision on probable net earnings, the take-home pay, the amount left after taxes are deducted. It is the burden of the plaintiff to prove, by a preponderance of the evidence, his/her net income and the probable loss of future earnings.
In deciding what plaintiff's future losses are, understand that the law does not require of you mathematical exactness. Rather, you must use sound judgment based on reasonable probability.
[Model Jury Charge (Civil) 8.11C, "Loss of Earnings" (2004) (footnotes omitted).]
The charge was given in this case, no objection was lodged, and we believe it was entirely appropriate.
However, along with the model charge, the jury was instructed, via the interrogatories on the verdict sheet, to decide whether plaintiff suffered any loss of earnings as a result of the accident even if it found that he had not suffered a permanent injury. While the model charge clearly instructs the jury that it may make an award only if it finds that it is "reasonably probable that plaintiff will lose income in the future, because [either] he/she has not been able to return to work [or] he/she has not been able to keep the same job [or] he/she will be able to work for a shorter period of time," it fails to include any instruction regarding how such an award must be limited in light of the finding already made regarding the non-permanent nature of the injury.
This problem was less sharply focused by the facts in Miskelly. There, the plaintiff claimed a brain injury resulting in an inability to continue his studies. 380 N.J.Super. at 575, 883 A.2d 424. His experts opined that he had a permanent injury, and his lifetime earnings would be $915,157 less as a result of his inability to obtain a graduate degree. Id. at 576, 883 A.2d 424. The jury found that the plaintiff did not suffer from a permanent injury and the judge did not submit the damages issue to the jury. Id. at 576-77, 883 A.2d 424. We affirmed, concluding that because plaintiff relied upon his lost wages over his "`work lifetime[,]' . . . the finding of no permanent injury preclude[d]" a finding of future lost earnings. Id. at 579, 883 A.2d 424.
However, as we have already noted, the jury is empowered to accept all, some or none of an expert's opinion. It is surely empowered to conclude, having found that plaintiff suffered no permanent injury, that he nonetheless suffered an injury that impaired his earnings "during a reasonable period of recuperation and recovery," id. at 578, 883 A.2d 424, and, depending upon the proofs at trial, that "`reasonable period'" might include some time into the future, though less than the rest of his anticipated work life.
When the model charge is provided together with a verdict sheet that provides no further guidance based upon the jury's predicate finding of non-permanency, we believe two undesirable results may occur. First, the jury might be confused and make no award for future economic losses despite the proofs. Or, the jury may make an award based entirely upon speculation and without regard to the fact that it had already determined plaintiff suffered no permanent injury.
We recognize that jury interrogatories "are not grounds for a reversal unless they [a]re misleading, confusing, or ambiguous," Sons of Thunder Inc. v. Borden, Inc., 148 N.J. 396, 418, 690 A.2d 575 (1997), and neither party in this case has asserted such a claim. However, "[t]he purposes of submitting interrogatories to the jury `are to require the jury to specifically consider the essential issues of the case, to clarify the court's charge to the jury, and to clarify the meaning of the *1107 verdict and permit error to be localized.'" Id. at 419, 690 A.2d 575 (quoting Wenner v. McEldowney & Co., 102 N.J.Super. 13, 19, 245 A.2d 208 (App.Div.), certif. denied, 52 N.J. 493, 246 A.2d 452 (1968) (emphasis added)). Based upon the specific facts of this case, the interrogatories permitted the trial judge to localize the error because any award for future lost earnings was speculative, and he so found.
But, given the frequency with which LOL litigation arises, and the possibility of confusion in future trials, we believe it would be prudent for the Committee on Model Civil Jury Charges to address the issue. If the proofs permit, the jury should be instructed in the general charge that although it found the plaintiff did not suffer a permanent injury, it may still make an award for future economic losses including lost earnings. However, it must also be told that such an award may not be for the balance of the plaintiff's work life, but rather must be limited only to that "reasonable period of recuperation and recovery" that proximately results from plaintiff's non-permanent injury. The jury verdict form should reinforce this limitation, either by a separate interrogatory that is answered only in the event no permanent injury is found, or by some predicate language reminding the jury of its obligation in this regard. We are further convinced that such revisions will arm the trial judge, if faced with a motion j.n.o.v. or a motion for a new trial as to damages, with additional information upon which to base his or her decision.
Affirmed.
NOTES
[1] Judge Grall did not participate in oral argument. However, the parties consented to her participation in the decision.
[2] Plaintiff's wife, Lori Haywood, asserts a per quod claim that is wholly derivative of her husband's claim. We shall use the singular "plaintiff" throughout this opinion to refer to Charles.
[3] Although NJM never filed a formal motion for j.n.o.v., we find no prejudice as a result of the procedure actually utilized, since each party was accorded an opportunity to fully brief the issue before the judge considered oral argument, and again when plaintiff moved for reconsideration.
[4] Plaintiff's average lost wages were $13,939.25 ($27,878.50 ÷ 2) for 2006 and 2007. The balance of the award, $47,121.50, actually reflects more than three times that annual loss.
[5] The issue is complicated to some extent by plaintiff's second accident. There was no evidence, beyond plaintiff's denial that he injured his back at that time, upon which the jury could conclude that any future income loss, if in fact it existed, was caused by the accident in question, and not the second accident. Indeed, in light of the admission that plaintiff generated earnings and was receiving temporary disability benefits in 2008, any calculation of a future wage loss resulting from the accident in question was purely speculative.